## John A. Cordell, Appellee, v. Louis Solomon and Isaac Stern, Appellants.

### Gen. No. 29,438.

1. Injunction—*propriety of preliminary injunction against maintenance of forcible detainer action.* A bill to enjoin the prosecution of a forcible detainer action, which alleged that complainant had accepted an option contained in his lease to extend the lease for a five-year period, by mailing a written notice of the acceptance of such option to defendants' place of business and that such notice had not been returned to him though bearing his return address, stated a case peculiarly within the province of a court of equity and a preliminary injunction was properly granted, especially where it appeared from the bill that complainant, upon learning that defendants claimed they did not receive the mailed notice, two months after the time fixed in the lease for giving such notice, delivered a notice to defendants two months before expiration of the first term of the lease.

2. Equity—*when existence of legal remedy not bar to equitable relief.* That a remedy at law is afforded will not necessarily prevent equity from taking jurisdiction to afford redress if the remedy in equity is more adequate because of some special circumstances.

Interlocutory appeal by defendants from the Superior Court of Cook county; the Hon. Denis E. Sullivan, Judge, presiding. Heard in the second division of this court for the first district. Affirmed. Opinion filed October 7, 1924.

Gottlieb, Schwartz & Markheim, for appellants; Ulysses S. Schwartz, of counsel.

C. OSCAR CARLSON, for appellee; I. T. GREENACRE, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an appeal by defendants, Louis Solomon and Isaac Stern, from an order of the superior court of Cook county, entered April 22, 1924, granting a preliminary injunction. Complainant's motion for such injunction was heard upon his verified bill as amended. Defendants, having previously entered their appearance by solicitors, objected to the motion, and in effect demurred *ore tenus* to the bill.

By the order defendants were temporarily enjoined from taking possession of certain demised premises in Chicago; from expelling complainant therefrom or from interfering with his business conducted thereon; and from further prosecuting their forcible detainer action pending in the municipal court of Chicago for the possession of the premises or from instituting any similar action.

In complainant's bill, filed March 10, 1924, it is alleged that for more than twenty years he has been conducting a retail grocery store and meat market on Argyle street in Chicago within 150 feet and east of the passenger station of an elevated railroad company; that during said period his business has been increasing and he has established a valuable good will in the neighborhood, worth for the next five years about $40,000; that he took possession of the premises in question, on the southwest corner of Argyle street and Winthrop avenue, about September 1, 1918, under a written lease from Eugenie B. Behnke, dated August 19, 1918; and that prior thereto his place of business was on the north side of Argyle street.

The lease is set out in the bill, and by its terms Mrs. Behnke leased to complainant from September 1, 1918, to April 30, 1924, for use in his grocery and

meat market, the said premises "known as Nos. 1101 and 1103 Argyle street, and extending from said Argyle street south to alley, including building and improvements now on said premises, and any building and improvements which may be hereafter placed thereon, as hereinafter provided," and for the monthly rental of $180, payable in advance at the office of J. C. Behnke (husband of the lessor) in Chicago, or at such other place as the lessor might from time to time in writing appoint. In addition to the usual provisions contained in leases, complainant is given the privilege of making certain enumerated improvements on the building, of constructing an addition on the south end for 35 feet or more, and of constructing and maintaining a loading platform. In case he makes such addition he is given permission to remove the south brick wall, provided the roof of the building is properly supported by pillars, etc., and he agrees at the termination of the lease, if required by the lessor, to replace such wall with a partition wall of lath and plaster. It is provided that such alterations and additions shall be made at his expense, and when made shall be and become a part of the realty and the property of the lessor; that in case he constructs the addition prior to January 1, 1924, he "is hereby given the option of extending the term hereof for a period of five years from the expiration hereof," at the same rental and upon the same terms and conditions, and if he elects to exercise said option he shall do so "*not later than the first day of January, 1924,* and shall make known his election or intention * * * by *delivering* to the party of the first part (lessor) a notice in writing of his said election on or before the said last-mentioned date, at the place where the rent is then payable"; and that upon the giving of such notice he shall become liable to pay as rent for the extended term to April 30, 1929, the same monthly rental, viz.: $180.

The bill further alleges that since complainant took possession he has continuously conducted his business on the premises, has kept and performed all of the covenants of the lease and has paid all rents as they became due, either to the lessor or her assignees, the defendants, down to and including March 1, 1924; that at his own expense he made many improvements to the building and premises, as permitted by the lease, among them, changing plumbing fixtures, putting in plate-glass windows, installing a new refrigerator and a new heating plant, etc.; that at his own expense he constructed the addition to the building south to the alley and complied with all the provisions of the lease relative thereto; that the value of said improvements and addition are in excess of $10,000, and were all completed without liens and before Mrs. Behnke sold the premises to defendants; that about December 15, 1922, defendants decided to purchase the premises; that they examined the building and improvements and the provisions of complainant's lease; that the price paid by defendants for the premises was fixed upon the basis of the provisions contained in said lease and of the facts above set forth, and defendants well knew that said lease would not expire until the end of said second five-year period, viz., April 30, 1929; that prior to their purchase defendants inquired of complainant whether he intended to quit possession on April 30, 1924, and were informed that he would continue to hold possession continuously until April 30, 1929; that about January 3, 1923, defendants consummated their purchase of the premises subject to the lease and complainant was notified that all rents maturing on and after January 1, 1923, were payable to defendants; that it was then orally agreed between defendants and complainant that all rents should thereafter be paid by complainant's checks, payable to the order of defendants, and mailed to defendants at No. 35 South Dearborn street,

Chicago; that in compliance with the oral agreement complainant thereafter paid the monthly rent in this manner, and the checks therefor always reached defendants; that on December 21, 1923 (prior to January 1, 1924), complainant personally mailed to defendants a notice, dated December 21, 1923, addressed to them at 35 South Dearborn street, Chicago, and signed by complainant, as follows: "The lease to me of 1101 and 1103 Argyle St., Chicago, Illinois, from Mrs. Eugenie B. Behnke, which she assigned to you, gave me the option of extending the term of the lease for five years from its expiration at the present rental and terms. I accept and exercise and elect to exercise that option as expressed in the lease. For further information you are referred to the lease. You have a duplicate of it"; that said notice was put in a stamped envelope addressed to defendants at No. 35 South Dearborn street, Chicago, and bearing complainant's return address thereon, the same as envelopes containing said rent checks, and the letter was deposited in the same mail box as had been the letters containing the rent checks; that the letter containing said notice was never thereafter returned through the mails to complainant; that not until about the middle of February, 1924, did complainant have notice that defendants claimed that he had not elected to continue in the possession of the demised premises under said lease until April 30, 1929, whereupon, on February 29, 1924, he *delivered* to defendants a second written notice of his election to continue in possession; that about February 13, 1924, complainant received a written notice from defendants to the effect that complainant, having failed prior to January 1, 1924, to exercise the option to extend the lease, quit and deliver up possession of the premises on April 30, 1924, and also make certain mentioned replacements in the building; and that about February 18, 1924, complainant received a second written notice

from defendants, making mention of an alleged breach by complainant of certain covenants of the lease by refusing to permit defendants to place "To Rent" signs upon the premises, and stating that, because of such refusal, defendants had elected to, and did elect, to terminate said lease, and notifying complainant to quit and deliver possession to defendants on February 29, 1924.

The bill further alleges that on March 4, 1924, defendants commenced an action in forcible detainer in the municipal court of Chicago to recover possession of the premises, returnable on March 10th; that complainant has always been and is now ready and willing to comply with the terms of the lease up to and including April 30, 1929, and hereby offers so to do; that if in said forcible detainer action he should be ordered dispossessed of the demised premises the good will of his business would be destroyed and he would suffer irreparable damage; that, inasmuch as by the terms of the lease the improvements and addition which he made become the property of the owners of the land at the expiration of said second five-year period, and inasmuch as the value thereof was considered as so much additional rent for said second five-year period, it would be inequitable and unconscionable to now dispossess him; that, after the making of the improvements and addition and prior to the conveyance of the premises to defendants by Mrs. Behnke, she inspected the same, and it was thereupon agreed between her and complainant that complainant might remain in possession of the premises until April 30, 1929, and that the giving of any notice by complainant whereby he disclosed his election to exercise the option contained in the lease was waived, and that in reliance thereon complainant has since made other improvements to the premises, among them the installing of a new heating plant at the cost of $1,100; and that by reason of said matters and things set

forth in the bill the option contained in the lease was not a bare option but one based upon valuable considerations and amounted in legal effect to a mutual contract of a renewal of the lease for said second five-year period.

The bill prayed that the defendants specifically perform the provisions of the lease and allow complainant to remain as a tenant in the premises until April 30, 1929, and that, pending a hearing on the merits, a preliminary injunction be granted, etc.

Counsel for defendants contend that the court should not have granted the injunctional order appealed from, but should have dismissed complainant's bill for want of equity. They argue in substance (1) that complainant has a full and adequate remedy at law, viz., by making a proper defense in the forcible detainer action; (2) that the bill does not disclose that complainant exercised his option of extending the term of the lease for a period of five years and until April 30, 1929, by *delivering* to defendants at the place where the rent was then payable a written notice of his election to exercise the option, prior to January 1, 1924, and that the time when the option was to be exercised was of the essence of the agreement; (3) that the allegations of the bill to the effect that complainant *mailed* to defendants a written notice of his election to exercise the option prior to January 1, 1924, shows that he has a full and adequate remedy at law; (4) that the fact that it appears from the bill that complainant made improvements and an addition to the premises in reliance upon his said option did not relieve him from the giving of the required notice of his election to exercise the option; and (5) that the other facts alleged in the bill did not relieve him from the giving of said notice.

After a careful perusal of the bill we are of the opinion that the case as therein stated is one which is peculiarly within the province of a court of equity

to take cognizance of and to grant injunctional and other proper relief, and that the court did not err in granting the preliminary injunction. In this connection the following cases may be cited: *Hunter v. Silvers,* 15 Ill. 174, 177; *Reed v. St. John,* 2 Daly (N. Y.) 213, 217; *Fountain Co. v. Stein,* 97 Conn. 619, 624. Even the arguments of defendants' counsel here made suggest the difficulty of complainant obtaining adequate relief in defending the forcible detainer proceedings. And we do not think that the decision in the case of *Dikeman v. Sunday Creek Coal Co.,* 184 Ill. 546, much relied upon by defendants' counsel, is at variance with our holding. In that case the lessees were given the right to remove coal from certain lands in Fulton county, Illinois, for a term of ten years from June 16, 1888, in consideration of their agreeing to pay a certain sum per ton for lump coal and $10 for the use of certain surface land, etc. The lease came by various transfers and assignments to the coal company. It contained a provision that its terms might "be extended an additional ten (10) years, at the option of the said second parties (lessees), by giving said first parties notice in writing twenty (20) days previous to the expiration of the first term herein named." The coal company, by its proper agent and wholly because of his negligence or forgetfulness, failed to give any written notice of its exercise of the option within the time limited. After the expiration of the original ten-year term the lessors commenced an action of forcible detainer for the possession and recovered a judgment. The coal company appealed and also filed a bill in equity in the circuit court to enjoin the further prosecution of the lawsuit and to enforce a specific performance of the agreement for the extension. There was a hearing on the merits of the equity suit, resulting in the court dismissing the bill for want of equity. In affirming the decree the Supreme Court held that a court of equity was bound by a contract as the parties had made it and had no

authority to substitute for it another and different agreement; that particular language was not necessary to make the time of performance essential, if right and justice in the individual case demanded it; and that an agreement must be complied with as made unless some stipulation is waived or there is a just excuse for noncompliance. And the court said (p. 551) that the coal company "lost its legal right by failing to comply with the condition precedent, and we do not see how equity can relieve against mere forgetfulness." In the present case the bill alleged that prior to January 1, 1924, complainant duly mailed a written notice, addressed to the defendants at their office where they had previously received the rent checks through the mails, notifying them of his election to exercise the option contained in the lease for the holding of the premises as tenant for the additional five-year period as provided for. The mailing of this letter constituted prima facie evidence of its receipt, and, if the letter was received, amounted, we think, to a sufficient "delivery" to defendants in apt time of the required notice. (*Gloucester Mut. Fishing Ins. Co. v. Hall*, 210 Mass. 332, 334; *Case v. Fagin*, 221 Ill. App. 209, 211.) In the bill there are also allegations of fact tending, in effect, to show a waiver on the part of defendants of the strict compliance of the. terms of the lease requiring complainant to deliver written notice of his election to exercise the option within the time stipulated, and also allegations of fact tending to show that complainant acted in good faith in the matter, for when he first learned that defendants claimed that his *mailed* notice of December · 21, 1923, had not been received, the bill alleges that he *delivered* to the defendants notices of his said election on February 29, 1924, more than two months before the expiration of the original term of the lease. In the *Dikeman* case, *supra*, the court also said (p. 550): "In a court of law the time for the performance of an

act is as essential as any other part of the contract. * * * Equity maintains a somewhat different rule, that time is not necessarily of the essence of a contract; and if it is not of the essence of an agreement, and a party has acted in good faith in a meritorious cause, equity may grant relief." Furthermore, it does not follow that, because the case is one in which a remedy at law is afforded, equity will not also take jurisdiction of the same state of facts to afford the same redress. "If the remedy in equity is more adequate because of some special circumstance of the situation, the jurisdiction of equity will be sustained." (*Warfield-Howell Co. v. Williamson*, 233 Ill. 487, 497.) In *Rago v. Village of Melrose Park*, 161 Ill. App. 18, 19, it is said:

"It is a familiar principle concerning injunctions *pendente lite* that they will be granted and continued in doubtful cases until final decree in the litigation if it appears that less harm from this course will result to the enjoined party if he should be finally victorious than would accrue to the complainant from the absence of the injunction if he were the winning party."

And in *Young v. Federal Union Surety Co.*, 183 Ill. App. 278, 281 (quoting from *City of Newton v. Levis*, 79 Fed. 715), it is said:

"The controlling reason for the existence of the right to issue a preliminary injunction is, that the court may thereby prevent such a change of the conditions and relations of persons and property during the litigation, as may result in irremediable injury to some of the parties before their claims can be investigated and adjudicated. When the questions to be ultimately decided are serious and doubtful, the legal discretion of the Judge in granting the writ, should be influenced largely by the consideration that the injury to the moving party will be certain, great and irreparable if the motion is denied, while the inconvenience and loss to the opposing party will be inconsiderable and may well be indemnified by proper

bond if the injunction is granted. A preliminary injunction maintaining the *status quo* may properly issue whenever the questions of law or fact to be ultimately determined in a suit are grave and difficult and if the injury to the moving party will be immediate, certain and great if it is denied, while the loss or inconvenience to the opposing party will be comparatively small and insignificant if it is granted.''

The order of the superior court should be affirmed and it is so ordered.

*Affirmed.*

FITCH, P. J., and BARNES, J., concur.