## 641, 642.　CANDLER INVESTMENT COMPANY *v.* COX,

### and *vice versa.*

1. The rule which requires a contract to be considered as a whole, and that no portion shall be discarded,—that it shall be construed "ut res magis valeat quam pereat,"—was properly applied by the trial judge in hold-ing that the contract in this case required a continuous foundation wall.
2. A contract which requires the building of a wall is breached by failure to build it, although a substitute more suitable for the purpose be pro-vided, unless the stipulation requiring a wall has been waived; and any damage resulting from the breach of the contract which required a wall instead of piers, as well as the cost of the wall itself, would be re-coverable.

3. Under the terms of the contract in this case, the proper measure of damage was applied. A having contracted to build a wall, as well as to insure the preservation of B's building, B, upon proof of the breach of the contract, was entitled, by express terms of the contract, to recover the cost of the wall, as well as all damage which resulted to her building in the general construction of A's building.

4. The verdict was supported by the evidence, and there was no error in refusing a new trial. The terms of the contract itself preclude the consideration of the greater portion of the assignments of error urged by the defendant.

Action on contract, from city court of Atlanta—Judge Reid. May 18, 1907.

Argued November 27, 1907.—Decided September 30, 1908.

*Candlers, Thomson & Hirsch, Rosser & Brandon,* for Candler Investment Company.

*Slaton & Phillips, John L. Hopkins & Sons,* contra.

RUSSELL, J. After more than one examination and consideration of the numerous points raised by the brief and suggested by the record, though several times confused by the multiplicity of questions and the mass of the testimony, we are prepared to adhere to the conclusion we first reached when this case was argued. We have been deliberate because of our respect for the great ability of the counsel for the plaintiff in error, and the zeal and earnestness with which their positions were maintained. The more familiar, however, we have become with the record, the more we have become satisfied that no sufficient reason has been shown for reversing the judgment of the lower court in refusing a new trial. Stripping the case of those contentions which plainly could not have been material, and confining our view to those points where the difference between the parties is radical, the questions to be determined are extremely simple. In the first place, it becomes necessary to determine the nature of the action. It is plainly a suit for the breach of a contract. The contract between the parties is set forth in full, and its breach is made the basis of the plaintiff's petition. If the contract was broken in any respect, the plaintiff had a cause of action against the defendant company, and, under the terms of the contract, the measure of damages would be whatever amount it would cost the plaintiff to put her property, or at least the north wall of her building, in the same condition in which it was at the time the contract was entered into. This much being certain, it became, after the intro-

duction of the contract, merely a matter of evidence for the jury as to whether the plaintiff's wall and building were damaged, and, if so, to what extent; that is, what sum would be necessary to enable the plaintiff to do for herself what the defendant had contracted to do for her.

1. In our judgment the contract was properly construed by the judge of the city court of Atlanta. We do not think that the proper construction of the contract admits of any doubt, especially when the rule is applied which requires a contract to be construed the more strongly against him who proposes it. The contract was as follows: "Georgia, Fulton County. This agreement made and entered into this 19th day of March, 1904, between the Candler Investment Company, a corporation created by and existing under the laws of the State, of the one part, and Mrs. Kate Cox, of said county, of the other part, witnesseth: That party of the first part, being the owner of the property known as old First Methodist Church lot, in the city of Atlanta, bounded on the north by Houston street, on the east by Pryor street, on the south by an alley and the property of said Mrs. Kate Cox, known as No. 113-15-17 Peachtree street, and on the west by Peachtree street and desiring to make proper and needful excavations on its said property up to the dividing line between its said property and the said adjoining property of said Mrs. Kate Cox, to the depth of about twenty-eight feet, for the purpose of constructing a seventeen-story fire-proof building, with basements, and having given party of the second part notice of its intention so to excavate for said purpose, has proposed to party of second part, as a measure of extraordinary care and precaution for sustaining her land, that if she would consent to first party excavating under her foundation and erecting a wall thereunder, it would do the same without cost to her, taking due care and precaution, in so doing, to protect her said premises, and, in the event of injury to her, to be responsible for all damage she may sustain by reason of said excavation or any work in connection therewith. That party of the second part accepts said proposition and agrees that party of the first part may, at its own expense and without cost to her, excavate under her north wall which adjoins the south property line of party of first part, for the purpose of erecting thereunder such foundation as may be necessary and proper to

sustain her land and prevent said wall from falling, or any injury thereto which will damage said property of second party or cause any damage or injury to her tenants. And in the event any such damage or injury should accrue, party of the first part to be liable therefor, and to save party· of second part harmless from any loss of any character whatever that may arise from anything done by party of first part, its agents, employees, or contractors in connection with the aforesaid work, or the erection of said building in general." (Signed by the parties.)

It is a well-settled and salutary rule of construction which requires not only that every contract shall be construed in pari materia, but that no portion shall be discarded if it can be avoided; ut res magis valeat quam pereat. In the first clause of the contract it will be observed that the Candler Investment Company proposed to put a *wall* under the wall already built by Mrs. Cox. In view of the well-settled opinion that a continuous wall is preferable, for the purpose of bearing a great strain, to disconnected piers (a view which seems to be overwhelmingly supported by testimony in the present case), it is hardly to be supposed that Mrs. Cox, in accepting the proposition of the Candler Investment Company to put a sufficient *wall* under her building, would volunteer the less desirable and more unequal support furnished by piers. This, no doubt, would have been the common-sense view of the situation if the court had submitted the contract to the jury for construction; but applying the legal maxim of construction, to which we have just adverted, which requires that one part of a contract shall be illustrated by the other portion, to preserve the whole, we have no difficulty in reaching the conclusion that as *a wall* had been proposed in the first clause of the contract, it must naturally be supplied, as qualifying the word "foundation," in the second clause of the contract. In fact, to make legal sense, the word "wall" must be implied to follow, in the contemplation of the parties, the word "foundation," in the second clause of the contract, as fully as if it had been expressed. The wall proposed in the first clause of the contract was *a foundation wall.* It was to go down to whatever depth was necessary to support the Cox wall in an unchanged and uninjured position. No matter how constructed, it was to begin at the point on the surface of the earth where excavation ceased, and extend upward under

the Cox wall until it supported it. The wall spoken of in the first clause was a wall continuous, for foundation purposes. It was *a foundation wall.* The foundation in the second clause of the contract, unless a change had been more specifically made, could only refer to the foundation wall mentioned in the first clause.

2. The plaintiff in error having contracted to build a foundation wall, this contract was breached when piers were built, even if the piers were sufficient for the purpose of supporting the wall in question. Mrs. Cox, having contracted for a wall, is entitled to have a wall, unless she waived it, even though the piers were more suitable for the purpose. Of course, in that event, she could not recover damages, because it would be damnum absque injuria. If, however, the breach of the contract resulted in damages to the wall of Mrs. Cox's building, which the defendant voluntarily contracted to insure against all damage, she would be entitled to recover those damages which resulted from any breach of the contract. The jury were authorized to find in favor of the plaintiff, either for damages due to excavating under Mrs. Cox's wall, or for failing to properly support it, so as to leave her building in as good condition as it was in at the time the contract was entered into; because the plaintiff in error voluntarily assumed that liability as an insurer.

3. It is stressed by the plaintiff in error that the proper measure of damages was not applied, even if a verdict in favor of the plaintiff was authorized. It is insisted that the proper measure would be the difference between the market value of the property before the construction of the Candler building and since its construction, or, in other words, the difference between the market value of Mrs. Cox's property before the changes in its condition were effected, and since. It is manifest that this would not be either a fair or a fixed measure, nor one readily ascertainable. This measure would depend upon the fluctuation of real estate values, which might be, and frequently would be, dependent on extraneous circumstances wholly disconnected from the injury. It is incompatible with the right arising from the breach of contract, because it would disregard, in every instance, the primal right of property owners to possess their property in such condition as they might see fit. We think the true measure of damage

is the difference in value between the wall of Mrs. Cox's building in its condition at the time of the making of the contract, for any purpose for which the wall was used or might be used and for which it might have a value, and its value for the same purpose after the changes wrought by the defendant company had been effected. In other words, to speak concretely, if, at the time the contract was made, Mrs. Cox's building stood on a firm foundation, not subject to sagging, settling, leaning, or other displacement (and Mr. Bruce, who supervised its construction, describes the original clay foundation as "elegant"), and was so constructed that she or any one who might purchase the building from her could safely and properly use the wall in the construction of a five or six-story building, and if, by the breach of the contract in which the Candler Investment Company guaranteed to prevent any injury, the wall was left in a condition where it had been loosened from the end walls of the building, and placed upon a foundation where it would have no value or would be unsafe as a portion of a wall for a five or six-story building, then the measure of Mrs. Cox's damages would be whatever it would cost to build the wall which the plaintiff in error had originally contracted to build, and to replace upon this foundation a wall as suitable in every respect as Mrs. Cox's wall originally was for all the purposes for which the original wall could have been used. Mr. Walker testified (and the jury had the right to base their verdict upon his testimony) that it would require $4,025 to remove the piers and excavate the dirt between them, and to replace the wall in its original condition. The jury having found a verdict for only $3,500, the plaintiff in error can not complain that the verdict is without evidence to support it.

4. It is insisted by the plaintiff in error that the court, having sustained the demurrer, striking from the plaintiff's petition all allegations of damages which were dependent upon the purposes for which Mrs. Cox intended to use the wall, erred thereafter in admitting evidence tending to show the use to which the wall in question could be put; and the ruling of this court in *Missouri Life Insurance Co.* v. *Lovelace,* 1 *Ga. App.* 446 (58 S. E. 93), is cited to sustain the position that the ruling upon the demurrer, not being excepted to, became the law of the case upon that subject, and that the lower court could not thereafter reverse itself.

We think it perfectly plain that the two rulings of the trial court are consistent with each other. It is a well settled principle, however, that the construction which a court places upon its own antecedent rulings is generally to be respected. But aside from this, we see a vast difference between purposes to which the plaintiff intended to put her building (and as regards to which any damages must necessarily be vague and speculative) and the purposes to which, as a matter of real value, a wall could be put, either by the owner or by any one else who might become possessed of the property. The intention to use the property for a specific purpose might or might not materialize, but the fact that the property could be used for a certain and specific purpose gave it a general market value. Counsel for the plaintiff in error, in their brief, say: "Supposing in this case the cost of building a wall is adopted and we pay the money, and Mrs. Cox never does build. Her rents and income are unchanged from the property, and she gets our money, and interest thereon in addition, and that, too, while the market value of her lot is undiminished. She *profits* by the transaction, whereas, she is only entitled to be compensated for actual loss." The fallacy of this argument exists in the fact that under the stipulations of the contract, Mrs. Cox was insured against damages to her property, which must include actual physical damages, which might be independent of any profits arising from her investment. Suppose, for instance, she had occupied the building as a dwelling, there would be no pecuniary profits to consider. But, as we view it, the question of profits does not enter into the question at all; because, if Mrs. Cox, instead of continuing to rent, as in the case supposed by the plaintiff in error, preferred to convert the store into cash, then the question would arise which would determine the true measure of damages, to wit, would the probable purchaser pay as much for the wall in its condition after the breach of the contract as he would have paid had the contract been fulfilled according to its terms? The wall must be disconnected from every other concomitant circumstance of value; because the contract concerns it alone, and because, regardless of the contract, Mrs. Cox would have been entitled to any appreciation in the value of her business location, or of the ground upon which the building was placed, due to a growth of the city or any other extrinsic circumstance.

Under the evidence in this case, the jury were required to find that there had been a breach of the contract. They were authorized to find the amount which the plaintiff recovered.

The rulings of the trial judge upon the demurrers, and as to the admission of testimony, are free from any material error, and the law of the case was fully and fairly presented. There was, therefore, no error in refusing a new trial upon the motion of the plaintiff in error. The contract which the plaintiff in error had entered into was so broad and sweeping in its nature that the express terms of the contract estopped it from asserting several of the propositions which it attempted to have presented to the jury, and by which ordinarily it might have protected itself from a recovery or diminished the amount. We will give one example. In the sixth ground of the amendment to the motion for new trial, the plaintiff in error excepts to the refusal of the court to instruct the jury that Mrs. Cox could not, in this action, recover for damage caused by excavations on the land of the Candler Investment Company, and not on Mrs. Cox's land. The principle invoked by the written request is sound law, as a general rule, and, but for the terms of the contract in evidence, it would have been error to refuse the request presented; but in this case the plaintiff in error, by express contract, has obligated itself (as will be seen from the contract) to vary the usual rule and "save party of second part harmless from any loss of any character whatever that may arise from anything done by party of first part, its agents, employees, or contractors in connection with the aforesaid work, *or the erection of said building in general.*" In this state of the evidence we think the trial judge very properly refused the instruction contained in the request, which, but for the stipulations of the undisputed contract, he would doubtless have given. By the terms of its contract, the plaintiff in error, waiving its rights as a coterminous landowner, insured the defendant in error. It became an insurer against any injury to Mrs. Cox's wall, and guaranteed to prevent any injury to her wall which would damage her property or injure and damage her tenants.

The affirmance of the judgment of the city court of Atlanta overruling the motion for new trial renders any consideration of the cross-bill unnecessary, and it is accordingly dismissed.

*Judgment, on the main bill of exceptions, affirmed; cross-bill dismissed.*