## 11116.   HERBENER & SON *v.* CUERO COTTON OIL & MANUFACTURING COMPANY.

The evidence showed a binding contract between the parties, and a breach thereof by the defendant. The court (sitting by consent without the intervention of a jury) did not err in refusing to award a nonsuit, or in rendering a verdict for the plaintiff. None of the rulings upon the pleadings or the admissibility of evidence shows cause for a new trial. (LUKE, J., dissents.)

DECIDED JULY 14, 1920.   REHEARING DENIED JULY 28, 1920.

Action on contract; from Fulton superior court — Judge Pendleton. October 21, 1919.

Application for certiorari was denied by the Supreme Court.

Cuero Cotton & Manufacturing Company sued Herbener

& Son for a sum of money alleged to have become due by reason of the breach of a certain contract. The judge of the superior court, who by agreement tried the case without the intervention of a jury, rendered a judgment in favor of the plaintiff; and to that judgment and the refusal to award a nonsuit, and to certain rulings upon the pleadings and the admissibility of evidence, the defendant excepted. The evidence before the court is substantially as follows: Reid represented Kohl & Company, who were brokers. He opened up negotiations with Herbener & Son looking to the sale of linters, and telegraphed to them as follows: "December 6, 1916. Offer subject to being unsold 500 clean mill runs, 7¼ cts. f. o. b. mill. Texas common points January. Your privilege inspection interstate rules. Rush answer by telegraph here quick." Herbener replied: "Dec. 6, 1916. Telegram received. We accept 500 January 7¼ cts. clean mill runs. Can use additional. Confirm." Reid replied: "Dec. 6, 1916. Confirm five hundred clean millrun January shipment at seven one quarter cents per pound f.o.b. cars Cuero Cuero certified weighers weight govern Cuero Cotton Oil (Company) sellers conditionally that you accept now on my inspection which made November sixth and personally found every bale to be clean millrun about one hundred sixty pound cut fairly bright and absolutely free from foreign substance. Stop wire me here before ten A. M. Thursday." Herbener & Son confirmed as follows: "Dec. 7, 1916. Night letter received and purchase confirmed." The plaintiff on December 9, 1916, wrote to Herbener & Son as follows: "Enclosed copy of letter is self-explanatory. We addressed a letter to you at Atlanta recently, but got your name on the envelope incorrect, and herewith hand you copy of said letter in case you have not already received the original. We will appreciate it if you will forward us shipping instructions by telegraph at once in accordance with copy of letter herewith enclosed." The letter referred to and enclosed in the foregoing letter was dated December 7, 1916, and was as follows: "This confirms sale to you of five hundred (500) bales of clean mill-run linters at 7¼ cts. per pound f. o. b. Cuero, January shipment, certified Cuero weights to govern. We have just received a telegram from Mr. Reid, of H. S. Kohl & Company, confirming this sale, and saying that you had accepted his inspection of Nov. 6th. This

lint has been stored in the compress warehouse for the past two months, and was seen by Mr. Reid on his last trip to Cuero, at which he pronounced the same excellent stock. Under the terms of the contract you have until the 5th of January in which to give us shipping directions. However, we are anxious to get this lint out immediately, if possible, so as to stop warehousing and insuring charges, and if you will give us shipping instructions on this, we will be glad to load the same out to you in the next 10 days, drawing draft on you payable January 5th, without exchange. Awaiting your wire, which will be appreciated, we beg to remain," etc. On December 9, 1916, the plaintiff wrote to Kohl & Company as follows: "We are in receipt of yours of the 7th inst., enclosing contract number 1250 between us and J. H. Herbener & Son of Atlanta, which is satisfactory, with the exception that you omitted to say in same that shipping instructions were to be furnished by not later than Jan. 5th, and sworn Cuero weights to govern. We are signing this contract, inserting these changes, and sending a copy of this letter to the buyer with request that if not satisfactory, to wire us on receipt of this." A copy of this letter was also sent to the defendant. The contract referred to was as follows: "Duplicate Contract No. 1250. New Orleans, La., December 7th, 1916. To Cuero Cotton Oil & Mfg. Co., Cuero, Texas. Gentlemen: We have this day sold for your account, as agreed between you and our Mr. Reid, to J. H. Herbener & Son, Atlanta, Ga. Quantity: five hundred bales (500) of your linters. Price seven and one-quarter cents (7¼c) per pound f.o.b. cars Cuero, Texas. Terms: Sight draft attached to B/L. *Sworn Cuero weights to govern.* Quality: (Seller agrees to deliver and buyer agrees to accept the 500 bales personally inspected by our Mr. R. T. Reid at Cuero on Nov. 6th.) Shipment January 1917. *Shipping instructions to be furnished by not later than Jan. 5th.* Brokerage: 25c per bale to be paid by seller. In accordance with Interstate Cotton Seed Crushers Association rules. Bales to be put in press box 27 x 54 inches. *This contract is performable at Cuero, Tex., in all respects.* Subject to the rules of :..................... Yours very truly, H. S. Kohl & Co., by H. S. Kohl. Accepted ................ Buyer. Accepted: *Cuero Cotton Oil and Mnfg. Co. Seller. Per Thornton Hamilton, Mgr.* Please sign and return at once." The

words underscored were written in ink; the rest of the contract was in printing and typewriting. The pen-written parts were in the same handwriting as the signature, "Cuero Cotton Oil and Mnfg. Co. Per Thornton Hamilton, Mgr." Kohl & Company, on December 11, 1916, wrote to Herbener & Son as follows: "We are sending you enclosed duplicate contract No. 1250 properly signed by the sellers covering purchase for your account of 500 bales of clean mill runs from Cuero, Texas. The mill did not return the original as we had requested, but they retained same for their files." With this letter was enclosed the contract set out above. Upon receipt of this letter Herbener & Son wrote Kohl & Company, declining to accept this contract, and pointed out the change in the contract and agreement as understood by them. Kohl & Company wrote to the plaintiffs of Herbener & Son's refusal to accept the contract, and suggested that they take the matter up direct with Herbener & Son. In the meantime Kohl & Company wrote to Herbener that they were satisfied that some arrangements could be made as to one of the terms in the contract as changed by the plaintiff, and advised Herbener that one of the other terms of the contract as altered ought to be more satisfactory to him than the original agreement. In compliance with Kohl & Company's suggestion, the plaintiff wrote to the defendant as follows: "Referring your letter 15th. Kohl. Insertions made changed contract in no important essential, and insertions not binding on you until approved. We waive same and stand strictly on broker's contract. If it is your intention cancel trade, wire if you will consent immediate arbitration before Texas Association, of which we are both members." The defendant then wrote to Kohl & Company as follows: "Referring to your letter, in which you state we should have telegraphed Cuero before cancelling the contract, we beg to state that we have not cancelled the contract, we have only failed to confirm their altered contract. Instead of our telegraphing them, it was Cuero's duty to telegraph us before they altered the contract, but as the market was up at that time, we suppose that they did not feel that it was necessary. They are the people that should have done the telegraphing, and not we. You know as well as we do that this is no time to discuss the terms on which linters were bought, two or three weeks after the purchase. We were perfectly will-

ing to confirm a straight contract at the time, but we are certainly not willing to carry out the contract now, and we do not believe that you would." There was further evidence showing that the plaintiff demanded of Herbener & Son that they abide by the contract made with Reid, and notice was given by the plaintiff to the defendants that the linters would be sold for his account, and damages would· be asked.

Upon the trial it was admitted that Kohl &· Company were brokers and were treated and dealt with as·such by both parties.

*C. T., L. C. & J.·L. Hopkins,* for plaintiffs in error.

*Smith, Hammond & Smith,* contra.

LUKE, J.  (After stating the foregoing facts.)  The opinion of the majority of the court is as follows:  "We do not think that the formal written contract which the defendant refused to sign contained any material variations from the 'telegraph contract' which had been previously agreed to by both parties. Conceding, however, for the sake of the argument, that it did, the telegraph contract had already been agreed to by both parties and was valid and binding upon both, and the plaintiff's effort to vary it by the suggested changes was without avail and did not amount to a repudiation of it, and the contract stood as previously agreed to by both parties.  The evidence plainly showed a breach of that contract by the defendants, and the judgment for the plaintiff was not only authorized but demanded.  It follows that the court did not err in refusing to award a nonsuit or in rendering a judgment for the plaintiff.  The court's rulings upon the pleadings and the admissibility of evidence show no material error, especially since, by consent, the judge was sitting without the intervention of a jury, and in such a case 'the niceties of the law touching the admissibility of evidence before a jury are of little weight.' "

The writer's view of the case is as follows:  The first and controlling question to be considered is whether there was a binding contract between the plaintiff and the defendants.  Did the defendants accept a contract the like of which the plaintiff understood its broker had agreed to for it with the defendants.  It is a well-settled principle that the agent must act for his principal within the scope of his authority.  The principal (the plaintiff), immediately upon its agent furnishing the written terms of the

contract of sale, made alterations and amendments to the contract, and advised its agent that such alterations and amendments were necessary, by stating that the contract was all right with the exception of such amendments and changes. The letter referred to only two exceptions, but the contract itself carried three material changes. The contract as prepared with such alterations and changes was the only contract that the plaintiff accepted in writing. The defendants never accepted it, and in my opinion are not bound by it until they do accept it. It is clear to my mind, as stated in Kohl's letter to the plaintiff when the contract was enclosed and before it was altered, that the writing expressed what Herbener & Son and Reid understood the contract was to be. It is also clear that the plaintiff did not so understand it. It is clear, therefore, that the minds of Herbener & Son and of the plaintiff did not meet as to the terms, and the fact that Herbener & Son were telegraphed by the plaintiff that the changes were immaterial and would be waived could not act as a mandamus which in effect would then require their acceptance of the contract. In other words, the plaintiff could not forward a contract with certain terms in it for acceptance by the defendants, and, after the defendants' refusal so to accept, waive certain of its conditions and demand an acceptance. In fact there was no contract between the plaintiff and the defendants until acceptance by the defendants of the contract as sent to them by the plaintiff. When the agent of the plaintiff sent to it the contract, which did not express the terms as understood by the plaintiff, a ratification could have been had of the acts of the agent, by accepting the contract that the agent had entered into. Instead of there being a ratification, there was a repudiation, and such repudiation was evidenced by the alterations and changes made by the plaintiff. As contended by the plaintiff, they may not have been so very material, and as suggested by the broker, in his opinion, they may have been advantageous, but the defendants had the right to select the terms upon which they were willing to trade. I do not think the evidence authorized the judgment. See *Florida Midland & Georgia Railroad Co.* v. *Varnedoe,* 81 *Ga.* 175 (7 S. E. 129); *Candler Investment Co.* v. *Cox,* 4 *Ga. App.* 763 (62 S. E. 479).

*Judgment affirmed.  Broyles, C. J., and Bloodworth, J., concur.  Luke, J., dissents.*