## E. E. Alger, Appellant, v. Community Amusements Corporation, Appellee.

### Gen. No. 9,876.

Opinion filed July 8, 1943. Opinion modified and rehearing denied September 21, 1943.

SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, of Chicago, for appellant; BERNARD NATH and MORTON LANE, both of Chicago, of counsel.

FRED E. GARDNER, of Rochelle, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

Appellant, who was the lessee in a ten-year lease from appellee for certain theatre premises in the city of Rochelle, filed a complaint in the circuit court of Ogle county to compel the specific performance of an option in the lease for an additional term of five years after its expiration, and to restrain appellee from

ousting him from possession. The chancellor upon a hearing entered a decree dismissing the complaint·for want of equity, and continuing in force, upon the filing of an appeal bond in the sum of $3,500, a temporary injunction restraining appellee from ousting appellant pending final determination of the cause. This appeal followed.

The option in controversy reads as follows: "It is agreed by and between the parties that upon the expiration of this lease on the 9th day of October, A. D. 1941 that the said party of the second part (lessee) may elect to remain in possession and shall have the right to hold over and in possession for an additional period of five years under the same terms and conditions as set forth in this lease, and the party of the second part shall give notice in writing not less than 90 days prior to the day of October 9th, A. D. 1941 of his election whether it be that he elects to exercise his option for the additional five year period, or if he elects to vacate the premises on the 9th day of October, A. D. 1941."

The rental was fixed at $6,000 per annum, payable $500 per month, plus 20 per cent of all gross receipts in excess of $40,000 per annum. The lease did not include two rooms in the front of the building.

Appellant is engaged in operating theatres. His office is in the city of La Salle. Abner I. Klein, secretary for the enterprises operated by appellant, testified that on July 1, 1941, after a conversation with appellant, he dictated a letter to the office stenographer, addressed to appellee, the substance of which is: "This is to notify you that I am exercising option for additional Five (5) years from October 9, 1941 to October 9, 1946 on my lease covering Hub Theatre, Rochelle, Illinois. Will you kindly acknowledge the above"; that appellant signed the letter in his presence, and that the witness placed it in an envelope directed to appellee at Rochelle, Illinois, sealed and

stamped the envelope, and dropped it in the inside mail box of the La Salle post office between 5:30 and 6 o'clock in the afternoon of that day and that the letter was never returned. Appellant and the stenographer corroborated his testimony as to the dictation and signing of the letter. A carbon copy, introduced in evidence, bore in pencil the initials of the secretary, appellant, and the general manager, each of whom testified the copy was initialed a couple of days after its date, pursuant to office routine.

Mr. Klein also testified that on August 4, 1941, he dictated, signed and mailed another letter to appellee, reading: ''Up to date we haven't received a reply to E. E. Alger's letter of July 1st, 1941, extending lease on Hub Theatre for the five-year option period. This letter, addressed to the Community Amusements Corporation, was as follows: (Here follows copy of the first letter). Will you kindly look into the matter and see that we are furnished with the proper acknowledgment.'' A copy of this letter, initialed the same as the other letter, was introduced in evidence.

Appellee admits receiving the letter of August 4, 1941, but denies ever having received the letter of July 1, 1941. On August 5, 1941, appellee's secretary treasurer wrote appellant, acknowledging receipt of the letter of August 4th, and advising him that as to the letter of July 1st, ''no such letter was received by us and that, therefore, according to the lease, you have forfeited your right to exercise the five year option, and we shall expect possession of the theatre at the close of business October 9, 1941.'' Appellee's president testified that he does not receive any letters with relation to the corporation, but all correspondence is taken care of by the secretary treasurer; that the witness had never seen the letter of July 1, 1941; and that he did not receive any letter or verbal communication prior to October 9, 1941 to the effect that appellant desired to exercise his option. The secretary treasurer

corroborated the president as to his duties, and testified he never received the letter of July 1, 1941, and that prior to July 11th he did not receive any notification that plaintiff intended to exercise his option.

Subsequent to July 9, 1941, appellee entered into a written lease of the theatre premises, including the two front rooms of the building, with another tenant for a ten-year period, beginning October 10, 1941, at a rental of $9,600 per annum. The lease is dated August 2, 1941, with notarial acknowledgments of that date, and appellee's secretary treasurer testified it was executed on that date and is still in effect. One of the notaries was appellee's counsel in this case.

Beginning on August 6, 1941, the record shows that the parties had some negotiations with respect to continued relations between them. Appellant claims that appellee's secretary treasurer mentioned terms of $2,000 a year additional rent for the five-year period and an additional five years, without saying anything about the new lease to the other party. Appellee's secretary treasurer testified that on August 6, 1941, he told appellant of the new lease, and that nothing could be done unless it was acceptable to the new lessees, but if any arrangement could be made with them, he would submit it to the board of directors; and that at a meeting on October 2, 1941, appellant offered to pay $1,000 additional per year, but asked that appellee pay half the cost of a new canopy. Two letters from appellee to appellant in August and September 1941, concern proposed meetings of appellant and appellee. The negotiations did not culminate in any agreement, and on October 3, 1941, appellee wrote appellant: "This is to advise you that we shall expect possession of the theater at the close of business October 9, 1941." This suit was instituted on the latter date.

Testimony as to the amount of money expended by appellant when he purchased from appellee the original equipment in the theatre and other amounts ex-

pended by him for the purchase of new equipment and in making repairs and improvements and in advertising during the ten-year period covered by the lease, was introduced in evidence as showing damages which appellant would sustain in the event of his losing his lease. The amount so expended was substantial but the provisions of the lease required appellant to make inside repairs and the original equipment and additional equipment were all purchased by him with the knowledge that the lease provided that such equipment should not be removed at the termination of the lease.

Appellant urges that a court of equity should grant specific performance of an option to extend a lease, notwithstanding the lessee's failure to give proper notice of the exercise of the option, if such failure was not due to wilful negligence, if the delay was slight, the loss to the lessor small, and the corresponding hardship on the lessee great. He argues that as the amendment to appellee's answer, setting up the new lease to others, was not filed until September 10, 1942, during the trial, and as such a lease was not mentioned in any of appellee's letters, and because of appellant's testimony that appellee's secretary treasurer did not mention any such lease in their negotiations, and as none of the parties to the lease except appellee's secretary treasurer testified in regard thereto, and because it contains a provision that the lessor shall not be liable if unsuccessful in ejecting appellant, that these things indicate that the lease was not executed on the date it bears; that appellee would suffer no substantial loss by a decree for specific performance, and that the lease represents no more than an opportunity to obtain an increased rental.

Appellant did not cross-examine appellee's secretary treasurer on his testimony that the new lease was executed on August 2, 1941, and made no effort to discredit the acknowledgments of the two notaries as to its execution, nor to introduce any testimony to the contrary. We agree with the holdings of the trial

court that the new lease was executed on August 2, 1941, and that appellee would suffer a substantial loss by a decree for specific performance, as well as that appellant will suffer such a loss by a denial of such a decree. The testimony shows that over the ten-year period of the lease appellant paid appellee an average annual rent of $6,669.54, which is considerably smaller than an annual rent of $9,600, and appellant made no effort to show that the two front rooms included in the new lease would account for any considerable part of the increased rent. In our opinion the provision for nonliability in case of failure to deliver possession shows merely a caution justified by the attitude of appellant.

*Cordell v. Solomon,* 234 Ill. App. 430, relied upon by appellant, is distinguishable from the case at bar. In that case, premises leased with an option for extension were afterwards sold. The lessee filed a bill to enjoin the purchaser from taking possession and prosecuting a forcible detainer suit, alleging mailing to the purchaser before the prescribed date therefor, of a notice of election to exercise the option and an oral agreement with the former owner for such extension, prior to the sale of the premises, as a waiver of notice; large expenditure of money by the lessee in reliance thereon and oral notice to the purchaser that the option would be exercised. The purchaser objected to the motion of the complainant for the issuance of a temporary injunction, and in effect demurred to the amended bill. The action of the trial court in granting a temporary injunction was affirmed on the grounds that the mailing of the notice was prima facie evidence that it was received, and that the bill alleged an oral agreement for extension amounting to a waiver of notice. There was no showing in that case that the owner of the premises would suffer any substantial loss if the lessee remained in possession, as was also the case in *Fountain Co. v. Stein,* 97 Conn. 619, 118 Atl. 47; *Xanthakey v. Hayes,* 107 Conn. 459, 140 Atl. 808; *Galvin v.*

*Simons,* 128 Conn. 616, 25 A. (2d) 64, and *Monihon v. Wakelin,* 6 Ariz. 225, 56 Pac. 735, also relied upon by appellant. None of them are persuasive here.

The evidence does not show that appellant's delay was slight in exercising his option. After the letter of July 1, 1941 was mailed, specifically asking for an acknowledgment, and knowing that his option must be exercised by notice on or before July 9th, appellant waited more than a month after writing the letter and almost a month after the expiration of the time within which he knew he must exercise the option, before taking any step to ascertain whether the notice had been received by appellee. The evidence shows the rent checks were customarily delivered personally to appellee by appellant's agent. Presumably appellant knew the law that a notice to be effective must be delivered to or received by appellee.

While mailing of the notice, properly stamped and addressed, would, in the absence of evidence to the contrary, raise a presumption that it was received (*Bickerdike v. Allen,* 157 Ill. 95, 103; *Keogh v. Peck,* 316 Ill. 318, 323; *Cordell v. Solomon,* 234 Ill. App. 430), the presumption was overcome by the positive testimony of the witnesses for appellee that it was not received. (*Meyer v. Krohn,* 114 Ill. 574, 585, 586.) There is nothing in the record which tends to discredit their testimony, and we agree with the finding of the trial court that the notice of July 1, 1941, was never received by appellee.

In seeking specific performance of the contract it was incumbent upon appellant to show that he had performed all the terms and conditions thereof on his part, or that he was prevented from doing so by the act of appellee. Not having complied with either of these requirements, he is not entitled to relief. (*Johnson v. Crouch,* 325 Ill. 559, 569.) The chancellor correctly dismissed the complaint for want of equity, and that decree is affirmed.

*Decree affirmed.*