**CONTINENTAL CASUALTY COMPANY**
v.
**CONTINENTAL RENT–A–CAR OF GEORGIA, INC., et al.**
No. 14282.

United States District Court,
N. D. Georgia,
Atlanta Division.
March 27, 1972.

Gambrell, Russell, Moye & Killorin, Atlanta, Ga., for plaintiff.

Skinner, Wilson, Beals & Strickland, Atlanta, Ga., for defendants.

## ORDER

ALBERT J. HENDERSON, Jr., District Judge.

The plaintiff in this diversity action seeks to recover insurance premiums allegedly unpaid and owing by the corporate defendant. Presently pending before the court are four motions for summary judgment, to-wit: (1) the plaintiff's motion as to liability against defendants, Glenn P. MacNerland, Thomas M. Dolan, Jr., Kenneth L. Kemp, Nancy G. Dolan (hereinafter referred to as the

"Purchasers"), and Hugh Overbey (hereinafter referred to as the "Seller"), (2) the Purchasers' like motion, (3) the Seller's like motion, and (4) the plaintiff's motion as to damages against the Purchasers and the Seller. Jurisdiction is properly founded upon 28 U.S.C. § 1332.

The indebtedness of the corporate defendant stems from premiums allegedly due on two insurance policies issued by the plaintiff to cover the defendant's rental vehicles. The motion concerning the exact amount of the unpaid premiums will be discussed later in this order. It is sufficient at this time to note that the defendants do not contest the fact that some amount is owing upon the insurance contracts; they merely contend either that the indebtedness is not owed by them or that the amount alleged is not due and owing.

The basis for the plaintiff's claim against the individual defendants is a "Stock Purchase Agreement" executed and closed on or about May 1, 1970. By the Agreement the Seller agreed to transfer 90% of the outstanding shares of stock in the corporate defendant to the Purchasers, retaining 10% for himself, for an agreed price of $25,000.00 in cash and $35,000.00 in the form of a promissory note. The pertinent paragraphs or sections of the Agreement upon which the parties rely read as follows:

5. All loans and other debts owed by the Corporation to Seller or Herbert Johnson or both or personally guaranteed by either or both of them (the "Loans"), which on this date total $72,428.50, shall be repaid by the Corporation as follows: . . . .

7. Purchasers, jointly and severally, agreed personally to guarantee their prorata shares of the outstanding debts of the Corporation at the time of Closing, other than debts owed to shareholders or former shareholders of the Corporation, and Seller agrees personally to guarantee his prorata share of said liabilities from time to time, until they have been paid in full.

14. At the Closing, Purchasers shall deliver to Seller the following items:

. . .

c. A promissory note in the principal amount of $72,428.50 pursuant to section 5 of this agreement.

16. Seller agrees to indemnify Purchasers against and hold them harmless from:

. . .

16.3 A claim being asserted against the Corporation for approximately $16,707.00 by Continental Casualty Co. Any amount due by virtue of this subsection 16.3 shall be paid by reducing the last payments due on the Loans.

(Underlined amounts were handwritten insertions into available blanks).

The plaintiff, acknowledging that it is not a party to the Agreement, nevertheless contends that it is a third-party beneficiary to the contract, and that pursuant to Ga.Code Ann. § 3–108, it may " . . . maintain an action against the promisor on said contract." Arguing that the intent of the parties, as evidenced by sections 7 and 16.3 of the Agreement, was to confer a benefit upon the plaintiff, movant seeks to hold the Purchasers and Seller as guarantors of the corporate defendant.

In response thereto, the Purchasers contend that section 7 of the Agreement was merely a statement of intent and that there was no specific guarantee running to the benefit of the plaintiff. Further, the Purchasers aver that the only true beneficiary of the subject Agreement is the corporate defendant, since the corporation could look to the shareholders for payment, beyond that owing upon their initial contribution. Ga.Code Ann. § 22–601(a). Therefore, the Purchasers conclude, the benefits flowing from the Agreement were primarily derived by the corporate defendant, which, in accordance with section 16.3, could deduct any recovery by the plaintiff from the amount it owed the Seller.

The Seller likewise contends that the plaintiff was not a beneficiary under the Agreement, Ga.Code Ann. § 3–108, and is

not a "promisee" within the meaning of Ga.Code Ann. § 20–306. Even if the plaintiff were found to benefit by the contract, the Seller argues that the plain meaning of Sections 5, 14c and 16.3 indicate that Seller is not to be held personally liable as a guarantor.

Ordinarily, the court's review of the contractual provisions here would end with the plaintiff's contention that he is seeking to directly sue the guarantors on an obligation of another. Unlike the surety situation, a guarantor, generally, cannot be sued to judgment in the absence of a prior judgment against the principal and a *nulla bona* return. Hammond v. Southern Cotton Oil Co., 101 Ga.App. 368, 114 S.E.2d 54 (1960). However, where it is alleged and proved that the principal debtor is insolvent or that he cannot be made to respond to a judgment against him, the plaintiff may initially sue the guarantor and recover directly from him on the judgment. Ferguson v. Atlanta Newspapers, Inc., 91 Ga.App. 115, 85 S.E.2d 72 (1954); Arkansas Fuel Oil Co. v. Young, 66 Ga. App. 33, 16 S.E.2d 909 (1941). The guarantor does not contract that the principal will pay, merely that he is solvent and is able to do so. Erbelding v. Noland Co., 83 Ga.App. 464, 64 S.E.2d 218 (1951). In the case at bar, the plaintiff has submitted ample deposition testimony to sustain its allegation of the corporate defendant's insolvency. Consequently, the plaintiff may properly maintain this action against the alleged guarantors if it is otherwise entitled to do so.

In construing a supposed third-party beneficiary relationship under Georgia law, it is obligatory to determine the intent of the parties to the contract. Levy v. Empire Ins. Co., 379 F.2d 860 (5th Cir. 1967); Whitley v. Bryant, 198 Ga. 328, 31 S.E.2d 701 (1944). As stated in Ga.Code Ann. § 20–702,

> The cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the inten-tion, it shall be enforced, irrespective of all technical or arbitrary rules of construction.

In addition, it is necessary to consider the contract as a whole in determining the construction to be given any part thereof. Ga.Code Ann. § 20–704 ¶ 4.

At the time of the closing, the defendant corporation was indebted to the Seller in the amount of $72,428.50, which sum was to be repaid by the corporation out of the subsequent earnings of the business. Section 5. The Purchasers agreed to subordinate a portion of their rights to the profits of the business when they delivered to the Seller a note for $72,428.50, in compliance with the conditions stated in Section 5. See, Section 14c. The Seller, on the other hand, agreed to pay the necessary closing costs for the Agreement, Sections 16.1 and 16.2 and, recognizing that the business was possibly liable for $16,707.00 in unpaid insurance premiums accumulated during the period when he owned a majority of the stock, also agreed to reduce the amount the corporation must pay him by whatever sum the plaintiff was entitled to recover. Therefore, the Seller, by Section 16.3, contracted to assume the entire obligation for payment of the debt owed the plaintiff, and since the corporation through the Purchasers were liable upon the note to the Seller, the latter provision of 16.3 allowed the Purchasers to reduce the note by an amount equal to any eventual recovery by the plaintiff. In other words, the parties envisioned that the corporation might be held liable to the plaintiff, and that a part of the corporation's earnings would have to go toward payment of the debt owed the plaintiff. In order to protect the Purchasers from possibly losing not only their share of the corporation's yearly earnings for unpaid insurance premiums, but also having to deduct a portion of the earnings for payments on the note (Section 5), the Seller agreed in such event to reduce the amount the Purchasers would lose by the sum held collectable by the plaintiff. Therefore, the indemnity terminology used in Section 16.3

was intended by the parties to protect the Purchasers from having to pay twice, *i. e.*, the loss of earnings to the plaintiff *and* to the Seller upon the note. The intent of Section 7 was to finally resolve the distribution of liability as to those other corporate obligations not otherwise provided for in the Agreement. From what has been said above, it can be seen that the parties considered the sum owed the plaintiff to be an obligation of the defendant corporation payable from the business' yearly earnings and deductable from the unpaid balance on the Purchasers' note to the Seller. Consequently, to hold that the obligation owed the plaintiff was also governed by the provisions of Section 7, would be to create an irreconcilable conflict in the contract in direct contradiction to the specific provisions therefor.

Accordingly, these contractual provisions, especially Section 7, were not intended by the parties to confer a benefit upon the plaintiff, and that the plaintiff is, at most, an incidental beneficiary possessing no rights thereunder. See, Seaboard Const. Co. v. Continental Mortgage Investors, 298 F.Supp. 579 (S.D. Ga.1969); accord, McWhirter Material Handling Co., Inc. v. Georgia Paper Stock Co., Inc., 118 Ga.App. 582, 164 S. E.2d 852 (1968). The benefits running to the plaintiff originate in its insurance contract with the corporate defendant, and not in the "Stock Purchase Agreement" executed by the Purchasers and the Seller. The plaintiff's motion for summary judgment as to liability against the individual defendants, therefore, is hereby denied. The cross-motions for summary judgment by the individual defendants are hereby granted.

The remaining motion for summary judgment concerns the plaintiff's requested adjudication on the question of damages. The court notes that on June 15, 1971, counsel of record were permitted to withdraw from further representation of the only remaining defendant, the Continental Rent-A-Car of Georgia, Inc., and that substitute counsel has not been obtained. Therefore,

service upon Hugh Overbey, in his capacity as president of the corporation would suffice for presentation of the issue of damages. However, Overbey was served with the motion through his attorney, as an individual, and not in his representative capacity. The same is true for the other officer-shareholders of the corporation. Moreover, the clear intent of the motion is not only to adjudicate the exact amount owed by the corporation, but also to apportion liability between the respective individual defendants. Since summary judgment has been granted in favor of the individual defendants, and since this latter motion pertains only to their proportionate liability for the stated damages, the plaintiff's motion has become moot and is hereby dismissed.

In summary, the plaintiff's motion for summary judgment as to liability is hereby denied. The motions for summary judgment submitted by the individual defendants are hereby granted. The plaintiff's motion for summary judgment as to damages is hereby dismissed as moot.