**In the Matter of George R. JOYNER and Sarah M. Joyner, Debtors.**

**In the Matter of JOYNER OIL COMPANY, INC., Debtor.**

**In the Matter of J–MART SUPER FOODS, INC., Debtor.**

**Bankruptcy Nos. 84–50362, 84–50398 and 84–50399.**

United States Bankruptcy Court, M.D. Georgia, Macon Division.

June 11, 1987.

See also, 55 B.R. 242.

G. McGregor Jordan, Jr., Macon, Ga., for Fulton Federal Savings & Loan Association.

William M. Flatau, Macon, Ga., for trustee, J. Coleman Tidwell.

Robert E. Bergman, Warner Robins, Ga., for debtors.

Joanne B. Cooper, Warner Robins, Ga., for Homer J. Walker.

Danny L. Akin, Macon, Ga., for Miriam D. Walker.

J. Coleman Tidwell, Macon, Ga., trustee.

## MEMORANDUM OPINION AND ORDER

ROBERT F. HERSHNER, Jr., Chief Judge.

Before the Court is the "Motion of Trustee to Assume Unexpired Lease of Debtors" filed on October 2, 1986, by J. Coleman Tidwell, Movant, the appointed Chapter 7 trustee in the consolidated bankruptcy cases of George R. Joyner and Sarah M. Joyner, Joyner Oil Company, Inc., and J-Mart Super Foods, Inc., Debtors.[1] On October 23, 1986, Homer J. Walker, Jr., filed an "Opposition to Motion of Trustee to Assume Unexpired Lease of Debtors." The motion came on for hearing on November 10, 1986, and February 13, 1987. After carefully considering the evidence presented at the hearing, the Court enters this memorandum opinion and order.

On April 4, 1972, Homer J. Walker, Jr. and C.A. Hickman, d/b/a Hickman Oil Company, entered into a lease agreement in which Mr. Walker leased certain property located in Houston County, Georgia, to Mr. Hickman.[2] The lease agreement was provided by Mr. Hickman. The leased property is described as follows:

All that real estate situate, lying and being in the Fifth Land District of Houston County, Georgia, and in Land Lot 174 therein, being a tract of land situated in the intersection of Green Street and North Houston Road fronting 125 feet on the south line of Green Street and 140 feet on the east line of North Houston Road as shown on a plat of survey of Property of Homer J. Walker, Jr. prepared by Theodore W. Waddle, Registered Surveyer [sic] on 7 October, 1969 of record in Map Book *15*, Page *145*, Clerk's Office, Houston Superior Court. Said plat and recorded copy thereof are hereby made a part of this description by reference thereto.

Under the terms of the lease agreement, the rent is $400 a month. The lease agreement requires the lessor to pay all taxes and assessments, and it requires the lessee to reimburse the lessor for all taxes and assessments levied against the improvements and equipment owned by the lessee. The terms of the lease agreement expressly provide that the lease can be assigned without the consent of the lessor, but the lessee remains responsible for the performance of the terms of the lease.

The lease is for a ten-year period, ending on July 3, 1982. Paragraph 2 of the lease agreement provides that the lessee has an option to extend the lease for three successive periods of five years each and that the rent will remain at $400 a month throughout the lease period if the extensions are exercised. Paragraph 2 of the lease agreement further provides that:

In order to exercise any of said extension options, Lessee shall give to Lessor a written notice at least thirty (30) days prior to the expiration of the then current period, and the sending of such notice shall constitute the renewal and extension of this lease in accordance with the terms of such renewal option so exercised, without the necessity of the execution of a separate renewal lease.

Paragraphs 13 and 14 of the lease agreement provide that:

13. In the event Lessee shall hold over beyond the expiration of the term herein provided or any renewal or extension thereof, it is expressly understood and agreed that any such hold-over tenancy shall be a month to month tenancy only and either Lessor or Lessee may terminate such tenancy at any time by giving the other party thirty (30) days written notice of its intention so to do.

14. It is further understood and agreed that all notices given under this lease shall be deemed to be properly served if delivered in writing personally,

---

1. These bankruptcy estates were substantively consolidated by order of this Court on September 6, 1984. On August 5, 1986, these bankruptcy cases were converted from Chapter 11 to Chapter 7 and Movant was appointed as the trustee.

2. The lease agreement between Mr. Walker and Mr. Hickman was properly recorded in the Clerk's Office of the Houston County Superior Court.

or sent by certified mail to Lessor at the address herein shown in the first unnumbered paragraph of this lease, or at the last address where rent was paid or to Lessee at its office at Warner Robins, Ga. Date of service of a notice served by mail shall be the date on which such notice is deposited in a post office of the United States Post Office Department.

On May 16, 1972, Mr. Walker and Mr. Hickman, d/b/a Hickman Oil Company, entered into a written agreement allowing Mr. Hickman to build a service station on the property leased under the April 4, 1972, lease agreement.

Pamela M. Richards, an attorney formerly associated with the law firm of Cowart, Varner, Harrington & Richards, in Warner Robins, Georgia, represented Mr. Hickman. She testified that she mailed a letter dated March 19, 1982, to Mr. Walker on behalf of Mr. Hickman. In the letter, Mr. Walker was informed of Mr. Hickman's intent to exercise his option to extend the April 4, 1972, lease agreement for five years.[3] Ms. Richards testified that this letter was mailed by regular mail pursuant to the routine business practices exercised by her firm. The testimony establishes that the address to which the letter was mailed was Mr. Walker's correct address. Ms. Richards testified that the letter was never returned. Mr. Walker and his wife both testified that they never received the letter. Mr. Walker further testified that he never received notice from Mr. Hickman by any other method informing him of Mr. Hickman's intent to exercise the option to extend the lease as provided for under the April 4, 1972, lease agreement.

On May 6, 1982, Mr. Hickman, d/b/a Hickman Oil Company, entered into a lease assignment with George R. Joyner and Sarah Metalis Joyner, d/b/a Joyner Oil Company.[4] In the lease assignment, Mr. Hickman assigned his rights, title, and interest under the April 4, 1972, lease agreement between himself and Mr. Walker to George R. Joyner and Sarah Metalis Joyner, d/b/a Joyner Oil Company. This lease assignment was amended by an "Addendum to Lease Assignment" on November 17, 1986. The property covered by the lease assignment is described as follows:

All that real estate situate, lying and being in the Fifth Land District of Houston County, Georgia, and in Land Lot 174 therein, being a tract of land situated in the intersection of Green Street and North Houston Road, fronting 125 feet on the South line of Green Street and 140 feet on the East line of North Houston Road, as shown on a plat of survey of property of Homer J. Walker, Jr., prepared by Theodore W. Waddle, Registered Surveyor on October 7, 1969, of record in Map Book 15, Page 145, Clerk's Office, Houston Superior Court. Said plat and the recorded copy thereof are hereby made a part of this description by reference thereto.

A tract of land immediately east of the above described property fronting 11 feet on Green Street and extending in a southerly direction an equal width of 11 feet for 140 feet.

On November 1, 1983, George R. Joyner and Sarah Metalis Joyner, d/b/a Joyner Oil Company, executed a promissory note in favor of Fulton Federal Savings and Loan Association of Atlanta (Fulton Federal), evidencing an indebtedness of $612,000 for a loan backed by the Small Business Administration. As security for this promissory note, George R. Joyner and Sarah Metalis Joyner, d/b/a Joyner Oil Company, executed a "Collateral Assignment of Lease" in favor of Fulton Federal on November 1, 1983.[5] The terms of the collateral assignment provide that:

---

3. The letter makes reference to the lease agreement as the lease agreement dated May 16, 1972. Ms. Richards testified that Mr. Hickman actually intended to extend the April 4, 1972, lease agreement, but that she did not have a copy of that lease agreement and was thus unaware of the date on which the parties entered into the lease agreement.

4. This lease assignment was properly recorded in the Clerk's office of the Houston County Superior Court.

5. This collateral assignment was also properly recorded in the Clerk's office of the Houston County Superior Court.

[I]n the event the [Joyners] default under the terms of the lease agreement aforesaid, [Fulton Federal] may enter into the premises under the terms of this agreement and fully enjoy all rights, title, and interest in and to said property to include the option to renew, the same as could the Assignors under the terms of the agreement from C.A. Hickman, d/b/a Hickman Oil Company.

Mr. Walker testified that C & S Bank directly receives the monthly lease payments on the property because C & S Bank holds a mortgage on the property. C & S Bank notified Mr. Walker sometime in April or May of 1986 that the lease payments for the property were not being made. The parties stipulate that as of May 1986 there have been no lease payments made for the use of the property.

Ken Bassett, a loan officer with Fulton Federal, testified that Fulton Federal is willing to cure the arrearage on the lease and to make the monthly lease payments of $400 until Movant assigns Debtors' rights under the lease. The testimony establishes that due to the location of this property, this property could be leased for $1000 per month.

■ In his motion, Movant seeks to assume this unexpired lease pursuant to section 365 of the Bankruptcy Code.[6] Notwithstanding certain exceptions, a trustee, subject to court approval, may assume or reject an unexpired lease of the debtor. 11 U.S.C.A. § 365(a) (West 1979). Section 365(d)(1) provides that in a case under Chapter 7 of the Bankruptcy Code, the trustee must assume or reject an unexpired lease of the debtor "within 60 days after the order for relief, or within such additional time as the court, for cause, ... fixes" or the unexpired lease is deemed rejected. 11 U.S.C.A. § 365(d)(1) (West 1979). In a bankruptcy case that has been converted from Chapter 11 to Chapter 7, the conversion order is treated as if it were the order for relief for the purposes of section 365(d). Thus, upon the conversion of Debtors' bankruptcy case from Chapter 11 to Chapter 7, a new sixty-day period commenced

during which Movant could assume or reject the unexpired lease. 11 U.S.C.A. § 348(a), (c) (West 1979). Thus, Movant's motion to assume the unexpired lease between Debtors and Mr. Walker is properly and timely brought before the Court.

The first issue for the Court to address is whether there is an unexpired lease for Movant to assume. In addressing this issue, the Court must determine if Mr. Hickman exercised his option to extend the lease before the original lease term ended on July 3, 1982. If Mr. Hickman exercised his option to extend, then Movant can assume or reject the unexpired lease. If Mr. Hickman failed to exercise his option to extend, then Movant, as assignee, merely occupies the property as a month-to-month tenant.

The Court finds that two provisions of the lease agreement are applicable in determining whether Mr. Hickman exercised his option to extend. Paragraph 2 of the lease agreement outlines the method for exercising the option to extend the lease. It provides:

In order to exercise any of said extension options, Lessee shall give to Lessor a *written notice* at least thirty (30) days prior to the expiration of the then current period, and the sending of such notice shall constitute the renewal and extension of this lease in accordance with the terms of such renewal option so exercised, without the necessity of the execution of a separate renewal lease.

Paragraph 14 further provides:

14. It is further understood and agreed that *all notices given under this lease* shall be deemed to be properly served if delivered in writing personally, or sent by certified mail to Lessor at the address herein shown in the first unnumbered paragraph of this lease, or at the last address where rent was paid or to Lessee at its office at Warner Robins, Ga. Date of service of a notice served by mail shall be the date on which such notice is deposited in a post office of the United States Post Office Department.

---

6. 11 U.S.C.A. § 365 (West 1979).

■ In construing the language of the lease agreement, the Court must turn to the rules of construction followed by Georgia courts. *See Boston Insurance Co. v. Gable*, 352 F.2d 368, 370 (5th Cir.1965); *Davis v. Jefferson Standard Life Insurance Co.*, 73 F.2d 330, 332 (5th Cir.1934), *cert. denied*, 294 U.S. 706, 55 S.Ct. 352, 79 L.Ed. 1241 (1935). Under Georgia law, the general rules for construction of contracts is applicable in construing lease agreements. *See Peachtree on Peachtree Investors, Ltd. v. Reed Drug Co.*, 251 Ga. 692, 694, 308 S.E.2d 825, 828 (1983); *Dorsey v. Clements*, 202 Ga. 820, 44 S.E.2d 783 (1947); G. Pindar, *Georgia Real Estate Law and Procedure* § 11–19 (2d ed. 1979).

Section 13–2–2 of the Georgia Code [7] sets forth the general rules for interpreting contracts. It provides, in pertinent part, as follows:

The following rules, among others, shall be used in arriving at the true interpretation of contracts:

(1) Parol evidence is inadmissible to add to, take from, or vary a written contract. All the attendant and surrounding circumstances may be proved and, if there is an ambiguity, latent or patent, it may be explained ... ;

(2) Words generally bear their usual and common signification; but technical words, words of art, or words used in a particular trade or business will be construed, generally, to be used in reference to this peculiar meaning. The local usage or understanding of a word may be proved in order to arrive at the meaning intended by the parties;

(3) The custom of any business or trade shall be binding only when it is of such universal practice as to justify the conclusion that it became, by implication, a part of the contract, except in regard to those transactions covered by Title 11;

(4) The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part;

(5) If the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred;

(6) The rules of grammatical construction usually govern, but to effectuate the intention they may be disregarded; sentences and words may be transposed, and conjunctions substituted for each other. In extreme cases of ambiguity, where the instrument as it stands is without meaning, words may be supplied;

(7) When a contract is partly printed and partly written, the latter part is entitled to most consideration;

(8) Estates and grants by implication are not favored;

(9) Time is not generally of the essence of a contract; but, by express stipulation or reasonable construction, it may become so.

O.C.G.A. § 13–2–2 (1982).

Under Georgia law, the whole contract must be looked to in arriving at the construction of any part. O.C.G.A. § 13–2–2(4) (1982); *Continental Casualty Co. v. Continental Rent-A-Car of Georgia, Inc.*, 349 F.Supp. 666, 669 (N.D.Ga.), *aff'd*, 468 F.2d 950 (5th Cir.1972); *Erquitt v. Solomon*, 135 Ga.App. 502, 503, 218 S.E.2d 172, 174 (1975). That construction of a contract which gives meaning and effect to all terms of the contract is favored over that construction of the contract that nullifies and renders meaningless part of the language contained in the contract. *McCann v. Glynn Lumber Co.*, 199 Ga. 669, 674, 34 S.E.2d 839, 842–43 (1945); *Whitmire v. Colwell*, 159 Ga.App. 682, 683, 285 S.E.2d 28, 29 (1981); *Morgan Guaranty Trust Co. of New York v. Atlanta National Real Estate Trust*, 149 Ga.App. 118, 119, 253 S.E.2d 774, 775 (1979); *Brooke v. Phillips Petroleum Co.*, 113 Ga.App. 742, 744, 149 S.E.2d 511, 513–14 (1966); *Sachs v. Jones*, 83 Ga.App. 441, 444, 63 S.E.2d 685, 688 (1951); *Candler Investment Co. v. Cox*, 4 Ga.App. 763, 766, 62 S.E. 479, 480 (1908).

**7.** O.C.G.A. § 13–2–2 (1982).

Furthermore, the contract should be construed most strongly against the party who had the contract prepared because that party had the power to control the provisions set forth in the contract at the time of drafting. *Boston Insurance Co.*, 352 F.2d at 370; *Hill v. John P. King Manufacturing Co.*, 79 Ga. 105, 109, 3 S.E. 445, 447 (1887); *Wilcox, Gibbs & Co. v. Owens*, 64 Ga. 601, 603 (1880); *Farm Supply Co. of Albany, Inc. v. Cook*, 116 Ga.App. 814, 818 n. 1, 159 S.E.2d 128, 131 n. 1 (1967); *Parkhill Trust Fund, Inc. v. Carroll*, 115 Ga. App. 108, 110, 153 S.E.2d 615, 617 (1967); *Candler Investment Co.*, 4 Ga.App. at 765, 62 S.E. at 479. If the full intent of the parties is not set forth in the final contract, then the loss must fall on the party who prepared the contract. *Farm Supply Co. of Albany, Inc.*, 116 Ga.App. at 819, 159 S.E.2d at 132.

■ Based upon these rules of construction, the Court concludes that the April 4, 1972, lease agreement, when read as a whole, requires that all notices given under the lease to be properly served must either be delivered in writing personally or sent by certified mail to the lessor. Such a construction gives meaning and effect to all of the provisions of the lease agreement. To construe the lease agreement otherwise would render Paragraph 14 meaningless. Furthermore, the lease agreement must be construed most strongly against Mr. Hickman, the party who furnished the lease agreement, because Mr. Hickman had the opportunity to include provisions in the lease agreement most favorable to himself. Because the lease agreement specified the manner in which the lessee could extend the lease, compliance with such provisions are conditions precedent to the extension of the term.

*Royer v. Honrine*, 68 N.C.App. 664, 666, 316 S.E.2d 93, 95 (1984); *Western Tire, Inc. v. Skrede*, 307 N.W.2d 558, 562 (N.D. 1981); *Alger v. Community Amusements Corp.*, 320 Ill.App. 184, 188, 50 N.E.2d 594, 597 (1943). *See also* Annotation, *Waiver or Estoppel as to Notice Requirement for Exercising Option to Renew or Extend Lease*, 32 A.L.R.4th 452 (1984); Annotation, *Sufficiency as to Method of Giving Oral or Written Notice Exercising Option to Renew or Extend Lease*, 29 A.L.R.4th 903 (1984).[8] If the provisions of the lease agreement had been complied with, the problem of proving that the notice had actually been sent on time and received would have been eliminated. *See Western Tire, Inc.*, 307 N.W.2d at 563–64. The Court thus concludes that the notice which Mr. Hickman sent by letter dated March 19, 1982, by regular mail did not meet the express requirements of Paragraph 14, and it thus was not proper under the terms of the lease agreement.

The Court is persuaded that this lease agreement would have been of great benefit to Debtors' bankruptcy estates, but the Court must construe the lease agreement pursuant to Georgia law. While equity abhors a forfeiture, no forfeiture results because Mr. Hickman received the full benefit of the original lease term under the lease agreement. Through his own failure to comply with the provisions of the lease agreement, he failed to exercise the option to extend the lease, and he has lost no benefit of his bargain. *See Western Tire, Inc.*, 307 N.W.2d at 562.

■ The Court concludes that under Paragraph 13 of the April 4, 1972, lease agreement, Debtors occupy the leased premises under a month-to-month tenancy, which automatically went into effect on the

---

**8.** The Court notes that several courts have refused to strictly hold parties to the terms of a lease agreement when there is proof that the lessor had *actual* knowledge of the lessee's intent to exercise his option to extend under the lease agreement. *See, e.g., Storey v. Austin*, 221 Ga. 692, 146 S.E.2d 728 (1966) (court found that oral notice was a slight deviation from the requirement of written notice because the evidence showed that the lessor received actual notice); *Fletcher v. Frisbee*, 119 N.H. 555, 404 A.2d 1106 (1979). Movant has failed to prove that Mr. Walker actually received notice of Mr. Hickman's intent to exercise his option. While there is a presumption that notice properly addressed and deposited into the regular mail is received, this presumption was overcome by Mr. and Mrs. Walkers' testimony that they did not receive the notice. *See Alger v. Community Amusements Corp.*, 320 Ill.App. 184, 188, 50 N.E.2d 594, 597 (1943).

last day of the ten-year lease period. Thus, there can be no argument that the lease agreement was extended by the acceptance of monthly lease payments by the C & S Bank on behalf of Mr. Walker, when Mr. Walker had no notice that Mr. Hickman had exercised his option to extend the lease agreement. *See Southern Ventures Corp. v. Texaco, Inc.,* 372 So.2d 1228, 1230 (La. 1979).

Accordingly; it is

ORDERED that the "Motion of Trustee to Assume Unexpired Lease of Debtors" filed on October 2, 1986, by J. Coleman Tidwell, Movant, is hereby denied; and it is further

ORDERED that this memorandum opinion and order be entered on the dockets on the date set out below.