Rockingham
No. 78-273

GARY FLETCHER & *a.*

v.

GEORGE FRISBEE

July 18, 1979

*Shaines, Madrigan & McEachern,* of Portsmouth (*Gregory D. Robbins* orally), for the plaintiffs.

*Wilbert B. Fisher,* of Seabrook, by brief and orally, for the defendant.

LAMPRON, C.J. This case presents issues involving an attempted exercise of a leasehold option. The defendant-landlord, refused to recognize the plaintiff-lessees' exercise of the option because he alleged that the lessees did not comply with its terms. Subsequently, the lessees brought a petition for a declaratory judgment that they in fact had effectively exercised the option, and for a preliminary and permanent injunction to enjoin the landlord from interfering with their possession of the property. The Trial Court (*Bean,* J.) found that the lessees had failed to exercise the option, and held that the landlord had no obligation to continue the lease after it had terminated on

October 1, 1977. The lessees excepted to the rulings and findings of the court and a reserved case was prepared and transferred. We sustain lessees' exceptions and remand.

The lessees operate a dry-cleaning-laundromat business in Portsmouth. They purchased the business in 1976 and at that time took an assignment of the existing lease. Several months after they had begun to operate the business, the defendant, George Frisbee, bought the building in which the lessees' business was located. Frisbee's purchase was subject to the existing leases. The lease for the dry-cleaning business provided that rent would be $150 per month. It also contained the following option clause:

> The Lessee shall have the option to extend or to renew this Lease for two (2) additional terms of five (5) years each to commence on October 1, 1977, upon the same terms and conditions as contained in this present Lease, except for the option to renew or to extend this Lease and the stipulated monthly rent. The Lessee shall exercise this option to extend or renew this Lease by giving notice thereof in writing to the Lessor at least thirty (30) days prior to October 1, 1977, by addressing a letter and mailing it, registered mail, postage prepaid, to the Lessor, her heirs, executors, administrators or assigns. The monthly rent to be paid during any extension or renewal period shall be that which is mutually agreed upon between the parties taking into consideration any increase in taxes, insurance or other fixed charges which were not the same as when the Lease was originally made.

In August 1977, the lessees asked their attorney to exercise the option. The attorney failed, however, to discover the 30-day deadline until the fifth or sixth of September. At that time, he promptly sent the notice by regular rather than registered mail as specified in the option clause. The landlord testified that he received the notification on either the eighth or ninth of September.

The landlord refused to recognize lessees' exercise of the option and on December 7, 1977, notified the lessees that they would have to quit the premises. The parties then agreed that the lessees would pay $300 per month in an escrow account until the matter was settled.

There is no major dispute concerning the facts. The main controversy involves the legal issues of whether the lessees should be considered to have legally exercised the option, and whether the term

in the option clause that called for a "mutually agreed upon" price renders it "illusory" as contended by the landlord.

■ It is well established that time is of the essence in option agreements, and this rule applies to a lessee who wishes to exercise a lease-renewal option. *Emery v. Hill*, 67 N.H. 330, 39 A. 266 (1893). *See generally*, 6 S. WILLISTON, CONTRACTS § 853 (3d ed. 1962). Nevertheless, equity will give relief to a lessee who has failed to exercise the option within the required time, if the delay is slight, the delay has not prejudiced the landlord, and the failure to grant relief would result in such hardship to the tenant as to make literal enforcement of the renewal provision unconscionable. *J.N.A. Realty Corp. v. Cross Bay Chelsea, Inc.*, 42 N.Y.2d 392, 366 N.E.2d 1313, 397 N.Y.S.2d 958 (1977); *F. B. Fountain Co. v. Stein*, 97 Conn. 619, 118 A. 47 (1922). *See generally*, Annot., 44 A.L.R.2d 1359 (1955); 1 A. CORBIN, CONTRACTS § 35 (1963).

In the present case the trial court did not apply the above-stated principle of equitable relief because it found that the landlord's rights were prejudiced. Specifically, it found that the landlord suffered hardship because he could not sell the property to a certain buyer while the lessees remained on the premises. The lessees assert that the trial court erred in making this finding because the hardship at issue cannot be mere general hardship, but must be prejudice, that is, a change of position resulting from the lessees' delay in giving notice. *See Sosanie v. Pernetti Holding Corp.*, 115 N.J. Super. 409, 416, 279 A.2d 904, 908 (1971); *Joseph Steier Inc. v. City of New York*, 65 Misc. 2d 296, 317 N.Y.S.2d 455, 458 (1970).

■ An examination of the record reveals that the landlord did not suffer hardship or prejudice from a change of position in reliance on the lessees' delay in giving this renewal notice. In the landlord's request for findings of facts and rulings of law, he stated that his rights to sell the property were prejudiced by the plaintiffs' continuing occupancy. This suggests that the cause of the landlord's hardship was not the lessees' delay in giving notice, but rather the lessees' mere presence on the property. Hardship would exist if active negotiations regarding sale of the property had been in progress when the notice deadline arose and the landlord lost the sale because of the lessees' delay. This, however, was not the case. When asked whether he took any action regarding the sale during the one week that the notice was late, the landlord replied, "To be honest with you, did I? I didn't even think of it until I got that letter in the mail." In view of this admission and the previously discussed indication that the landlord's

hardship stems merely from the lessees' presence on the premises, it cannot be concluded that the landlord suffered prejudice *as a result of the lessees' delay*. Therefore, we hold that the trial court erred in finding the requisite prejudice to the landlord.

Even if it is determined that the landlord suffered no hardship as a result of the lessees' delay, the lessees cannot invoke equitable relief unless they show that they would suffer substantial harm if evicted. 2 J. POMEROY, EQUITY JURISPRUDENCE § 453b (5th ed. 1941). The record indicates that the lessees would suffer such hardship. In moving, they stand to lose the advantage of their strategic location and the good will they have established. The estimated cost of moving the equipment is $25,000. Furthermore, the boilers and steam pressers are not movable according to the lessees. *J.N.A. Realty Corp. v. Cross Bay Chelsea, Inc.*, 42 N.Y.2d 392, 398, 366 N.E.2d 1313, 1317, 397 N.Y.S.2d 958, 961 (1977).

The landlord discounts the lessees' claim of hardship. He asks the court to recognize that no equities favor lessees who have enjoyed a rental rate of less than one-half the fair rental value of the property. *Koch v. H & S Development Co.*, 249 Miss. 590, 163 So. 2d 710 (1964); *Jones v. Dexter*, 48 Wash. 2d 224, 292 P.2d 369 (1956). The landlord maintains that the principle is applicable to this case since the trial court found that the rent was less than one-half the fair rental value of the property.

The landlord's arguments overlook the fact that the rental rate was most likely fixed as a result of arm's-length bargaining five years previously and that both parties freely entered into the lease agreement. In any event, the renewal provision does not call for continued payment of the same low rent. Rather, it requires the parties to arrive at a mutually agreeable figure. Thus, if the renewal option is enforced, the landlord will have an opportunity to improve upon the original bargain and at the same time the lessees will be able to avoid substantial losses. On the other hand, if the court recognizes the principle the landlord invokes, the lessees would suffer a forfeiture. Courts of equity avoid enforcing a forfeiture. 2 J. POMEROY, EQUITY JURISPRUDENCE § 459 (5th ed. 1941); 50 Am. Jur. 2d *Landlord and Tenant* § 1187 (1970).

The third and final factor the lessees must show to gain relief is that the delay in giving notice was slight and the result of an accident or an honest mistake. The record supports such a finding. *Joseph*

*Steier v. City of New York*, 65 Misc. 2d 296, 317 N.Y.S.2d 455, 457 (1970).

 Although the lease-renewal option required that notice be sent by registered mail, it was sent by regular mail. The landlord asserts that the lessees should not be relieved from their failure to exercise the option in the specified manner. Generally, courts have recognized that any *method* of giving notice may be employed "which is effective to bring such notice home to the lessor and serves the same function and purpose as the authorized method." *University Realty & Dev. v. Omid-Gaf, Inc.*, 19 Ariz. App. 488, 490, 508 P.2d 747, 749 (1973). Thus, the notice sent by ordinary mail is sufficient here even though the option agreement required that notice be sent by registered mail. *Korey v. Sheff*, 327 N.E.2d 896 (Mass. App. 1975).

The option provided that if the lessees renewed the lease, the new monthly rent would be mutually agreed upon by the parties. The landlord asserts that because the contract does not specify a definite rental amount or a method for fixing that figure, the agreement is illusory and unenforceable. It should be noted that the only term left to be agreed upon is the rental price. The option provides that all other terms and conditions will be the same as those in the present lease except for the option to renew and the monthly rent.

 When an option specifies that the new rent will be mutually agreed upon, a reasonable figure is implied. *Playmate Club, Inc. v. Country Clubs, Inc.*, 62 Tenn. App. 383, 462 S.W.2d 890 (1970). Furthermore, "reasonable" rent has been construed as the fair rental value of the property when used for the purpose intended by the original signatories to the agreement. *Moolenaar v. Co-Build Cos., Inc.*, 354 F. Supp. 980 (D.V.I. 1973). Thus, a method exists for fixing the rent in the instant case if the parties cannot arrive at an agreeable figure. *See* Annot., *Renewal of Lease - Rental to be Agreed Upon*, 58 A.L.R.3d 500, 503–05 (1974).

In sum, we hold that the trial court erred in finding and ruling that the landlord suffered prejudice by the lessees' delay in giving their notice of renewal under the option in the lease. The lessees' exceptions are sustained, and the case is remanded to the trial court to determine from the record, viewed in the light of this opinion, whether in its discretion a specific performance of the renewal option clause should be decreed. *Chute v. Chute*, 117 N.H. 676, 678, 377 A.2d 890, 891 (1977); *see Gulf Oil Co. v. Rybicki*, 102 N.H. 51, 52, 149 A.2d 877, 879 (1959); *cf. N.H. Supply Company, Inc. v. Steinberg*, 119 N.H. 223, 400 A.2d 1163 (1979)(remand of record for trial court fact-finding).

If the renewal of the lease is decreed and the parties cannot mutually agree on the monthly rent to be paid "taking into consideration any increase in taxes, insurance or other fixed charges which were not the same as when the lease was originally made," the trial court will set a reasonable monthly rent.

*Plaintiffs' exceptions sustained; remanded.*

All concurred.