**WESTERN TIRE, INC., Plaintiff and Appellee,**

v.

**Donald SKREDE and Anne Skrede, Defendants and Appellants.**

**Civ. No. 9950.**

Supreme Court of North Dakota.

June 25, 1981.

Rolfstad, Winkjer, McKennett, Kaiser & Stenehjem, Williston, for defendants and appellants; argued by Richard A. McKennett, Williston.

Anseth & Rustad, Williston, for plaintiff and appellee; argued by Gerald H. Rustad, Williston.

PAULSON, Justice.

Donald and Anne Skrede appeal from a judgment entered against them on December 15, 1980, by the District Court of Williams County. We reverse the judgment and remand the case to the district court to enter judgment in accordance with our opinion.

On March 25, 1968, the Skredes leased to Bahner Tire and Recapping, Inc., Lot 2, Block 1, of the Monroe Subdivision of Williston. The lease term was for five years with two renewal options which allowed the tenant to renew the lease for successive five-year periods. The lease commenced on May 1, 1968, and was assigned by Bahner Tire and Recapping, Inc. to Western Tire, Inc. The rent payments were increased from $250 per month to $275 per month pursuant to a modification of the contract between the Skredes and Bahner Tire and Recapping, Inc. The lease provides, in part:

"LEASE

.    .    .    .    .

"3. *Term*: This lease shall be for a term of five (5) years commencing May 1, 1968 and ending on the 30th day of April, 1973. . . .

.    .    .    .    .

"17. *Waiver*: Failure of either party to insist upon strict performance of any covenant or condition of this lease in any one or more instances shall not be construed as a waiver for the future of any such covenant or condition, but the same shall be and remain in full force and effect.

.    .    .    .    .

"23. *Renewal*: Tenant shall have the right to renew or extend the within lease for a period of five (5) years, following the expiration of the renewed or extended term provided for in Section 22 hereof, and beginning on the first day of May, 1978 at a rental of Two hundred, fifty ($250.00) and no/100 Dollars per month, and under the same terms and conditions as for the original term as set out herein. *In the event Tenant exercises this option to renew or extend, written notice thereof shall be given Landlord at least thirty (30) days prior to the commencement of such renewal or extension period.*

.    .    .    .    .

"27. *Notices*: Any notice to Landlord provided for herein shall be deemed to have been served *only* when such notice in writing addressed to Landlord, or to the party to whom rent was last paid, has been deposited in a U.S. Post Office by *registered or certified mail* addressed to the place where the rent shall have last been accepted prior to such notice. . . .

.    .    .    .    .

"29. *Time*: It is expressly stipulated that time shall be of the essence of this lease.

"30. *Binding on Heirs, etc.*: This lease shall be binding upon the heirs, devisees, executors, administrators, successors in interest, and assigns of parties hereto.

"31. *Modifications*: This contract constitutes the whole agreement between parties. There are no terms, obligations, covenants, or conditions other than contained herein. No modification or variation thereof shall be deemed valid unless evidenced by an agreement in writing. . . ." [Emphasis added.]

The first option to renew was exercised by Bahner Tire and Recapping, Inc. and the lease was extended from May 1, 1973, to

April 30, 1978. The lease was subsequently assigned to Western Tire, Inc. with the consent of the Skredes. On February 27, 1978, the president of Western Tire, Inc., Paul Johnson, contacted the corporation's attorney, Gene M. Haugen, and advised him that the renewal option should be exercised. Haugen prepared the renewal option and sent it by ordinary mail to the Skredes' address where all rental payments were sent. The Skredes did not receive the notice of the exercise of the renewal option on April 1, 1978.

On April 5, 1978, Haugen discovered that he had sent the notice by ordinary mail rather than by registered or certified mail as the lease required. He sent a second notice, by certified mail, to the same address on April 5, 1978. On or about April 14, 1978, the Skredes informed Western Tire that the lease was canceled because of Western Tire's failure to give timely and proper notice of the option to renew, pursuant to Paragraph 23 of the lease. The Skredes presented an offer to Western Tire to allow Western Tire to continue to rent the property for two years at a rental of $500 per month. Western Tire rejected this offer and sent rental payments of $275 per month to the Skredes who did not accept the payments except for the payments made in April and May of 1978. The April and May rental payments were accepted because the lease provided that Western Tire would have a sixty-day holding-over period upon termination of the lease.

On September 13, 1979, the parties entered into a contract whereby Western Tire agreed to pay the Skredes $650 per month from July 1, 1978, to June 30, 1979. From July 1, 1979, to June 30, 1981, Western Tire agreed to pay $800 per month as a rental payment. The rental payments from July 1, 1981, to June 30, 1983, were to be increased according to the increases in the Cost of Living Index from July 1980 to July 1981. The contract was executed in order to allow Western Tire to remain in its business location in the event that the court determined that Western Tire had not exercised the option to renew the lease.

Western Tire commenced this action on February 13, 1980, and contended that the notice mailed on February 27, 1978, in the ordinary course of the mails exercised the renewal option of the lease executed on March 25, 1968. Western Tire also contended that the notice mailed on April 5, 1978, exercised the renewal option of the lease. The Skredes submitted their answer on September 25, 1980, and requested a declaratory judgment which would terminate the March 25, 1968, lease. The action was tried on September 25, 1980, and the district court entered judgment in Western Tire's favor on December 15, 1980. The Skredes filed their notice of appeal from the judgment on November 18, 1980.

The sole issue presented for our review is whether or not the district court committed error when it held that Western Tire was entitled to equitable relief because the failure to send the notice by certified mail on February 27, 1978, was merely a technical breach of the contract warranting equitable intervention. In addition, the district court relied upon § 31–11–03(24) of the North Dakota Century Code, which provides:

"*31–11–03. Disputable presumptions.*—All presumptions other than those set forth in section 31–11–02 are satisfactory if uncontradicted. They are denominated disputable presumptions and may be contradicted by other evidence. The following are of that kind:

.     .     .     .     .

"24. That a letter duly directed and mailed was received in the regular course of the mail."

Conclusions of law are fully reviewable because they are not fortified by the clearly erroneous rule applicable on appeal to findings of fact. *Northwestern Bell Telephone Co. v. Board of Commissioners of Fargo*, 211 N.W.2d 399 (N.D.1973). Generally, options must be accepted unequivocally and in accordance with the terms of the option. *Haugland v. Hoyt*, 267 N.W.2d 803 (N.D.1978); *Northwestern Bell Tel. Co. v. Cowger*, 303 N.W.2d 791 (N.D.1981). In the instant case, the lease provided that notice was served only when the notice was in

writing and was deposited in a U.S. Post Office and sent by registered or certified mail. The option to renew the lease requires that the written notice be sent at least thirty days prior to the commencement of the renewal period, May 1, 1978. By specifying the manner and the time within which the acceptance of the option to renew was to occur, the Skredes expressly limited Western Tire's power of acceptance. Because the Skredes did not receive the notice until after April 5, 1978, and the notice was not sent by certified mail until April 5, 1978, both the manner and the time period required for exercising the option to renew the lease were not met.

■ The lease contract contained a provision which stated that "time shall be of the essence of this lease [para. 29 of lease]". This provision requires that acceptance of the option to renew the lease must occur within the time period specified for acceptance (at least thirty days prior to the commencement of the May 1, 1978, renewal period). In addition, paragraph 31 of the lease provides that the lease terms could not be modified except by a written agreement. A refusal to give effect to a late attempt to accept the irrevocable offer created by the option results in no forfeiture because the option holder has received the full agreed equivalent of the price paid for the option. 1A Corbin on Contracts § 273 (1963). Nevertheless, courts have granted equitable relief in such circumstances if the delay is slight, the delay has not prejudiced the landlord, and the failure to grant relief would result in such hardship to the tenant as to make literal enforcement of the renewal provision unconscionable. *Fletcher v. Frisbee*, 119 N.H. 555, 404 A.2d 1106 (1979); see, generally, Annot., 44 A.L.R.2d 1359 (1955).

■ The instant case is distinguishable from *Fletcher v. Frisbee, supra,* because even if it is granted that the delay was slight and that the Skredes were not prejudiced by the attempted late acceptance of the option to renew the lease, the failure to grant relief does not render the literal enforcement of the renewal provision unconscionable. The Skredes would be forced to accept inadequate rentals in comparison to what similar properties in the vicinity would command as rentals. Notwithstanding cases such as *Joseph Steier, Inc. v. City of New York*, 65 Misc.2d 296, 317 N.Y.S.2d 455 (1970), and *Fletcher v. Frisbee, supra,* which held that the fact that the landlord could obtain a higher rental under a new lease is not sufficient prejudice to terminate the lease, we believe that the inadequate rental payments in the instant case constitute sufficient prejudice to the Skredes to justify the termination of the lease. In any event, no forfeiture warranting equitable intervention would occur because Western Tire could have continued the lease for an additional five-year period merely by exercising a prompt acceptance to the irrevocable offer created by the option. Western Tire has fully received the equivalent of the price paid for the option.

■ Western Tire also relies upon the cases of *Korey v. Sheff*, 3 Mass.App. 266, 327 N.E.2d 896 (1975); and *Fletcher v. Frisbee*, 119 N.H. 555, 404 A.2d 1106 (1979), to support the proposition that a lease provision which states that a renewal notice is given if mailed by registered or certified mail, does not require that written notice be sent by registered or certified mail to the exclusion of other modes of communication which could be used to effectively exercise the option to renew. The general rule of contracts holds that the offeror can require notice of acceptance in any form that he pleases and may specify the manner in which notice is to be given. 1A Corbin on Contracts § 67 and § 78 (1963). Apparently, the rule stated in *Korey v. Sheff, supra,* and *Fletcher v. Frisbee, supra,* was based upon the view that actual receipt of written notice regardless of the means used to send the notice would operate as an effective acceptance, and that the means used to send the notice of acceptance were not exclusive.[1] See, generally, Annot., 51 A.L.R.2d 1404.

---

1. See Restatement, Contracts (2d) § 68.

■ In the instant case, the lease required that "Any notice ... shall be deemed to have been served *only* when such notice in writing ... has been deposited in a U.S. Post Office by registered or certified mail ... [emphasis added]". The Skredes specified an exclusive method by which the acceptance must be communicated.[2] The Skredes were the masters of their irrevocable offer and limited the mode of acceptance which Western Tire could use. Because the mode of expressing the acceptance was exclusive, the unauthorized mode used by Western Tire to express its acceptance of the irrevocable offer created by the option was not effective and the Skredes never received the acceptance within the prescribed time period. Thus, the irrevocable offer created by the option of renewal lapsed.[3]

Western Tire also asserts that § 31–11–03(24), N.D.C.C., creates a presumption that the letter was received by the Skredes and that actual receipt of the notice before the option to renew had lapsed operated as an acceptance of the irrevocable offer. Rule 301(a) of the North Dakota Rules of Evidence provides:

"RULE 301—PRESUMPTIONS IN GENERAL IN CIVIL ACTIONS AND PROCEEDINGS

"*(a) Effect.* In all civil actions and proceedings not otherwise provided for by statute or by these rules, if facts giving rise to a presumption are established by credible evidence, the presumption substitutes for evidence of the existence of the fact presumed until the trier of fact finds from credible evidence that the fact presumed does not exist, in which event the presumption is rebutted and ceases to operate. A party against whom a presumption is directed has the burden of proving that the nonexistence of the presumed fact is more probable than its existence."

■ Rule 301, N.D.R.Ev., imposes upon the party against whom the presumption is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence. However, before a presumption can be said to apply the facts giving rise to the presumption must be established by credible evidence. *In the Matter of the Estate of Wagner*, 265 N.W.2d 459 (N.D.1978). Under § 31–11–03(24), N.D.C.C., the facts necessary to give rise to the presumption that a letter was received in the regular course of the mail are facts indicating that the letter was duly directed and mailed. The district court relied upon the affidavit of Haugen as the basis for concluding that the presumption was applicable. Haugen's affidavit disclosed that the letter was properly addressed but that the letter containing the notice of renewal was deposited in the mail by a member of Haugen's office staff.

■ We believe that the district court committed error by relying upon the presumption in these circumstances. The lease provided for an exclusive means by which the option could be accepted by Western Tire. The requirement of sending notice by

---

**2.** Sections 9–03–18 and 9–03–19, N.D.C.C., provide:

"*9–03–18. Mode of communication of acceptance.*—If a proposal prescribes any conditions concerning the communication of its acceptance, the proposer is not bound unless they are conformed to. In other cases any reasonable and usual mode may be adopted.

"*9–03–19. When consent communicated.* —Consent is deemed to be communicated fully between the parties as soon as the party accepting a proposal has put his acceptance in the course of transmission to the proposer in conformity to section 9–03–18."

**3.** When the offer mentions the manner in which the offeror wishes an acceptance to be transmitted, the courts generally hold that the offeror has merely suggested this form of acceptance. However, the question then becomes whether the method of communication was authorized or was reasonable under the circumstances. Even if the authorized means of communication is used, the failure to address it properly may result in the loss of the benefit that the acceptance was effective when dispatched. We do not reach the question of whether or not the method of communication used by Western Tire was authorized or was reasonable because the lease contained a provision stating an exclusive method for expressing acceptance. See, generally, Calamari & Perillo, Law of Contracts 2d § 2–25, § 2–27.

registered or certified mail was designed to eliminate the problem of proving that the notice had been sent on time and was received. The district court's reliance upon the presumption circumvented the express provisions of the lease which stated that the only means of acceptance was to be notice sent by registered or certified mail. In addition, no written modification of the contract occurred which would authorize Western Tire's means of sending the notice.

For reasons stated in this opinion, the judgment of the district court is reversed and the case is remanded to the district court to enter judgment in accordance with our opinion.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.