Grafton
No. 81-172

DONALD F. LEMAY *& a.*

v.

STEWART A. ROUSE *& a.*

April 7, 1982

*Douglas A. Jones*, of Lebanon, by brief for the plaintiffs.

*Albert J. Cirone, Jr.*, of Lebanon, by brief for the defendants Rouse.

*K. William Clauson*, of Hanover, by brief for the defendants Tallman and Paint 'N Paper Barn, Inc.

PER CURIAM. The issue in this case is whether the Superior Court (*Johnson*, J.) erred in dismissing the plaintiffs' petitions for declaratory judgment and for injunctive relief. We find no error.

In March 1978, Donald and Susan Lemay and Oran O'Reilly were the sole stockholders of the Paint 'N Paper Barn, Inc., located in West Lebanon, New Hampshire. On March 3, the corporation leased certain premises from the defendant Rouse for a term of three years with option to renew for an additional three years. The option to renew was to be exercised in writing "not less than ninety days prior to the expiration of the original term." Rent was $500 per month for the original term and $550 per month for the renewal term.

The lease also included an option to purchase, which set the price at $100,000 for the original term and $102,000, $104,000, and $106,000 for each successive year of the three-year renewal term.

On May 7, 1979, the corporation assigned the lease to the plaintiffs with the approval of the Rouses, their landlords. On the same date, the plaintiffs sold all their stock in the corporation to the defendants Drew and Susan Tallman, for $49,000 payable as follows: $10,000 at the closing; $16,500 on January 10, 1980; $2,500 on May 7, 1982; and $20,000 on January 10, 1985. The plaintiffs also subleased the premises to the defendants Tallman, with approval of the Rouses.

The original term of the sublease was from May 7, 1979, to February 28, 1981. The rent was set at $675 per month during the

original term and $750 per month during the renewal period. In addition, the sublease provided the defendants Tallman with an option to purchase for $118,500 during the initial term and $121,000, $124,000, and $127,000 for each successive year of the three-year renewal term. The sub-tenants were required to notify the plaintiffs on or before December 1, 1980, of their intent to renew the sublease. The Tallmans' notice to renew was timely.

The plaintiffs' notice of intent to renew the lease was also due on or before December 1, 1980; however, they did not notify the defendants Rouse of their intent to renew until January 8, 1981, approximately five weeks late. The defendants Rouse rejected the plaintiffs' late notice on January 13, 1981.

In early December 1980, after the plaintiffs had missed their renewal deadline, the defendants Rouse began lease negotiations with the defendants Tallman, the plaintiffs' sub-tenants. The negotiations culminated in the execution of a written lease on January 20, 1981, to commence on March 1, 1981, when the plaintiffs' lease expired.

The plaintiffs filed a petition in superior court, seeking a declaratory judgment that they should be allowed to renew their lease. They also sought to enjoin the defendants Rouse from terminating their lease and from dealing with the defendants Tallman and Paint 'N Paper Barn.

The defendants Rouse and Tallman and Paint 'N Paper Barn moved to dismiss. After hearing arguments, the superior court granted these motions, and the plaintiffs appealed on three grounds: that the superior court erred in refusing to excuse their delay in renewing the lease; that the superior court ruling unfairly denied them the right to exercise the purchase option included in their original lease; and that they would suffer a "forfeiture" if their lease were not renewed because they would lose the profit they expected to make from the rent and the option price they planned to charge the Tallmans. Both the rent and option price the plaintiffs set for the Tallmans exceeded the amounts the defendants Rouse required the plaintiffs to pay.

■ The trial court's rationale for dismissing the plaintiffs' petition is not entirely clear because the court did not articulate its reasons. If the court refused to grant equitable relief to the plaintiffs on the ground that they had an adequate remedy at law, then the court erred. The plaintiffs have no remedy at law because their landlord did not owe them a duty either to renew their lease or to refrain from leasing to another tenant. A duty would have arisen only if the plaintiffs had fulfilled the express condition precedent

of notifying their landlord on or before December 1, 1980, that they wished to renew their lease. Thus, the defendant's duty to refrain from leasing the premises to other tenants would have arisen only if the plaintiffs had performed the requisite act. RE-STATEMENT (SECOND) OF THE LAW OF CONTRACTS § 225(1), at 165 (1981).

■ If the court concluded that the petition did not make out a case for equitable relief, then it was correct. When a trial court reaches the correct result, but on mistaken grounds, this court will sustain the decision if there are valid alternative grounds to support it. *Slater v. Planning Board of Town of Rumney*, 121 N.H. 212, 216, 427 A.2d 511, 513 (1981). Regardless of the reason for the trial court's decision, no remand is necessary because the trial court reached the correct result.

■ *Fletcher v. Frisbee*, 119 N.H. 555, 404 A.2d 1106 (1979), makes it clear that equity will allow a tenant to escape the consequences of his failure to renew a lease within the required time only if (1) his delay in renewing was slight, (2) the delay did not prejudice his landlord, and (3) failure to grant relief would cause the tenant unconscionable hardship. *Id.* at 558, 404 A.2d at 1108.

■ First, the five-week delay in this case was substantially longer than the *slight* delay of no more than nine days in *Fletcher*. *See id.* at 557, 404 A.2d at 1107–08. Second, unlike *Fletcher*, no facts alleged in the present case warrant a finding that failure to renew the lease would result in unconscionable hardship. The lessee in *Fletcher* was in possession, a fact which weighed heavily in the court's finding of unconscionable hardship. *See id.* at 559, 404 A.2d at 1109. In addition, a move would have cost the plaintiffs in *Fletcher* their strategic location and good will and burdened them with the expense of moving their dry-cleaning and laundering equipment. *Id.*, 404 A.2d at 1109. The plaintiffs are not in possession in this case, and no hardship of the sort contemplated by *Fletcher* will result from nonrenewal of their lease.

To be sure, the plaintiffs in this case stand to lose the profit they would have made by charging the sub-tenants more for rent and the purchase option than their landlord charged them, but this can hardly be found an *unconscionable* hardship.

Because the plaintiffs have failed to satisfy two prongs of the *Fletcher* test, consideration of the third part is unnecessary. We hold that the dismissal of the plaintiffs' petition was proper.

*Affirmed.*