**In re the MILLYARD RESTAURANT, INC., Debtor.**

**Bankruptcy No. 89–796.**

United States Bankruptcy Court,
D. New Hampshire.

Feb. 1, 1990.

Eric Edward Nord, Myers, Jordan & Gfroerer, Concord, N.H., for debtor.

J. Michael Deasy, Deasy & Dwyer, P.A., Nashua, N.H., also Richard Gagluso, Nashua, N.H., for landlord.

Virginia Greiman, Boston, Mass., United States trustee.

MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This case was heard before the court at several hearings on the Debtor–In–Possession's Motion To Assume Unexpired Lease Of Nonresidential Real Property filed by the Debtor on October 30, 1989. By agreement with the parties the hearings were bifurcated into the determination first of the legal and factual question as to whether the lease in question, involving the Millyard Restaurant building in Manchester, New Hampshire, did or did not expire prior to the Chapter 11 petition filing on September 1, 1989. The evidence on this issue was completed at the hearing on January 29, 1990.

The lease in question was due to expire on September 1, 1989 unless the lessee, the debtor herein, exercised an option to renew the lease for a further five year term. By provisions of the lease the exercise of the option to renew was to be by written notice, mailed by certified mail to the landlord at a post office box in Manchester, New Hampshire, with the notice to be received not less than 90 days prior to the expiration date. Accordingly, under the terms of the lease the exercise of the option to renew should have occurred on or before June 2, 1989. The debtor offered during the course of the hearings various contentions as to the giving of both written and oral notice of the renewal prior to June 2, 1989. However, for the reasons and findings dictated into the record at the conclusion of the January 29th hearing, I have determined that there is no credible evidence sufficient to establish that either written or oral notice of an unequivocal election to renew the lease was given to the landlord prior to the mailing of the letter dated July 28, 1989 to the landlord so stating. Moreover, considering the contentious nature of the dealings between the landlord and tenant in this case for at least six months prior to the renewal notice deadline, I also find that there cannot be implied from the conduct of the parties any agreement by the landlord to waive the requirement of the written notification of the lease exten-

sion. Such waivers would have to be shown as the intentional relinquishment of a known right and there is no such evidence present in this case. Cf. *Host International Inc. v. Summa Corporation*, 94 Nev. 572, 583 P.2d 1080, 1081 (1978).

There is evidence in the record that on May 5, 1989 the landlord's attorney transmitted to the landlord a copy of a sublease that had been negotiated by the debtor, with a party named Trumpeny Bit, Inc., to rent a portion of the premises in question for a period extending beyond the September 1, 1989 termination of the basic lease absent a renewal of the basic lease. This sublease was directed to the landlord for his consent. The landlord never responded directly to the tenant with regard to the proposed sublease. During the May–June 1989 period the landlord and the debtor's principal had acrimonious phone conversations regarding the landlord's demands that the debtor make good various arrears including bounced rent checks. The debtor argued that the landlord was in default under various provisions of the lease and demanded corrective action.

On June 30, 1989 the landlord entered into an "agreement" with Trumpeny Bit, Inc., for the leasing of a portion of the premises as a "subtenant" provided that the subtenant would pay or assume the liability for certain defaults on a part of the debtor with regard to the premises and providing further:

> "Mr. Allard also agrees to give Trumpeny Bit, Inc. first option to negotiate a lease with Mr. Allard for the second and third floors in the event that the Millyard Restaurant, Inc.'s lease with Mr. Allard is terminated for any reason. This option would be for a right of renewal of the lease for the two (2) five (5) year periods of rental beginning September 1, 1989 or for the unexpired balance of any term. It is understood that the rental of said premises would be at a minimum of Eight Dollars ($8.00) per square foot and will not exceed Twelve Dollars ($12.00) a square foot."

It was while the landlord, Mr. Allard, was negotiating this agreement with Mr.

Paul, the principal of Trumpeny Bit, Inc., that Allard discovered that the 90–day notice deadline had not been met by the debtor and that in fact he was in a position to deal with the basic lease as not being renewed. Accordingly, by lease agreement entered into on August 28, 1989, Allard rented the entire premises previously rented to the debtor under a new lease agreement for rental rate almost double the rental rate provided for by the lease with the debtor.

■ While the May 5, 1989 transmittal of the proposed sublease from the debtor to the landlord evidenced some intention to renew the basic lease I have concluded on review of the entire record that that event was not the expression of an *unequivocal* intent on the part of the debtor to renew the basic lease and, more importantly, *to obligate itself* for the rental obligations for the next five years under that lease. In my judgment that unequivocal expression of intent to renew did not occur until the letter of July 28, 1989.

Accordingly, the issue before the court for decision is whether under applicable New Hampshire law the mailing of a letter on July 28, 1989 attempting to exercise an option to renew a lease will have the legal effect of extending the lease term notwithstanding lease provisions requiring a written notification of intent to renew not less than 90 days prior to the lease termination date.

The Supreme Court of New Hampshire has established that equity may relieve a tenant from strict compliance with a lease provision regarding procedures for renewal of the term of the lease in appropriate cases. In *Fletcher v. Frisbee*, 119 N.H. 555, 404 A.2d 1106 (1979), the New Hampshire Court ruled in effect that if a three-pronged test were met this would excuse the lessee from strict formalities:

> It is well established that time is of the essence in option agreements, and this rule applies to a lessee who wishes to exercise a lease-renewal option. *Emery v. Hill*, 67 N.H. 330, 39 A. 266 (1893). *See generally*, 6 S. WILLISTON, CONTRACTS § 853 (3d ed. 1962). Neverthe-

less, equity will give relief to a lessee who has failed to exercise the option within the required time, if the delay is slight, the delay has not prejudiced the landlord, and the failure to grant relief would result in such hardship to the tenant as to make literal enforcement of the renewal provision unconscionable. *J.N.A. Realty Corp. v. Cross Bay Chelsea, Inc.,* 42 N.Y.2d 392, 366 N.E.2d 1313, 397 N.Y.S.2d 958 (1977); *F.B. Fountain Co. v. Stein,* 97 Conn. 619, 118 A. 47 (1922). *See generally,* Annot. 44 A.L.R.2d 1359 (1955); 1 A. CORBIN, CONTRACTS § 35 (1963). [119 N.H. at 558, 404 A.2d 1106]

With regard to the "first-prong" of this test the New Hampshire Court elaborates a little further on its opinion as follows:

The third and final factor the lessees must show to gain relief is that the delay in giving notice was slight and the result of an accident or an honest mistake. [119 N.H. at 559, 404 A.2d 1106]

The court in the *Fletcher* case determined that a delay in giving a written notice of nine days over the deadline could be found to be a "slight delay" for purposes of its test and held that the tenant in that case was entitled to a determination that the lease had effectively been extended. The Court found no reliance by the landlord upon the failure to give notice, resulting in any specific prejudice from a change of position during the period of delay in giving notice, and the court further found the requisite hardship on the part of the tenant in that it would lose the advantage of a strategic location and goodwill that it had established and would face substantial moving costs for its equipment and machinery.

The New Hampshire Supreme Court in a later decision in *Lemay v. Rouse,* 122 N.H. 349, 444 A.2d 553 (1982), applied the *Fletcher* test to different facts and held that the landlord should prevail where the written notification was received five weeks over the deadline date, and where the landlord had negotiated a new lease on favorable terms with a new lessee prior to receiving the late notification of exercise of

the option under the old lease. The Court held that the five week delay in its case was not a "slight delay" and that furthermore the debtor had failed to establish unconscionable hardship by the termination of the lease. The tenant in the *Lemay* case would have lost profits it could have made by charging subtenants more for the premises, including a purchase option, than the landlord charged it for those rights. Since the tenant in *Lemay* had failed to satisfy two prongs of the *Fletcher* test the court in *Lemay* found it unnecessary to decide the third part of the test.

■ Applying the standards developed in the *Fletcher* and *Lemay* decisions to the present facts I conclude that the tenant has failed to meet the tests established under New Hampshire law for relieving it of the explicit lease terms requiring written notification not less than 90 days prior to the lease termination date. The delay in exercising the option to renew was either through negligence or perhaps a desire to "straddle" by putting off the firm obligation of the debtor for rent for the new term until other matters were resolved. Neither ground meets the *Fletcher* test. There was no accident or honest mistake within the meaning of the *Fletcher* decision. Obviously a simple "didn't think of it" excuse can not suffice or the exception would eat up the rule.

As noted above, if the party's conduct had permitted, and the facts warranted, the absence of a writing before June 2, 1989 would not be fatal to the debtor's case. However, here the evidence does not support any implied waiver of that formality. The evidence here can only support the debtor's exercise of the option in terms of the writing that was mailed on July 28, 1989. That writing simply cannot be considered a "slight delay" in meeting a lease obligation requirement of giving notice on or before June 2, 1989. It is in fact in excess of the delay time period found to justify termination of a lease in the *Lemay* decision. Moreover, the landlord here did rely on the failure to meet the notice requirement and negotiated a favorable lease with another party prior to receiving the

written notification by the debtor of its intent to renew.

It is true that the debtor here has met the "third prong" of the *Fletcher* test, in that the evidence does establish substantial hardship from a loss of its lease. The debtor does have an investment in the property in question and a recognized location and good will in its operation at its present location. However, under New Hampshire law, the debtor must establish *all* prongs of the required test to excuse it from compliance with the clear and specific provisions of the lease regarding renewal.

The court accordingly will enter an order determining that the lease in question terminated and expired, as a matter of law effectively before the bankruptcy filing, and therefore there is no lease to assume or assign under the present motion. See 11 U.S.C. § 365(c)(3); see also *Matter of Shelco, Inc.*, 107 B.R. 483 (Bankr.D.Del.1989). However, before entering such order the court will consider at a continued hearing, set by separate order, the question of whether the court should proceed to take evidence on the "second" question in this matter, i.e., the question of whether the debtor can show sufficient facts to justify assumption and/or assignment of the lease, for reasons of judicial economy, even though such further decision is not strictly necessary in view of my decision on the existence of the lease.