Strafford
No. 89-390

*In re* TRAILER AND PLUMBING SUPPLIES

July 23, 1990

*John P. Arnold*, attorney general (*David S. Peck*, senior assistant attorney general, on the brief and orally), for the State.

*Brennan, Caron & Lenehan*, of Manchester (*Michael J. Iacopino* on the brief and orally), for the respondent, Bay Forest Development Corporation.

JOHNSON, J.   This appeal in an action by the State under RSA 595-A:6 (Supp. 1989) concerns the ownership of certain plumbing supplies and the applicability of the Uniform Commercial Code (UCC), RSA chapter 382–A, to mixed contracts for goods and services. The respondent, Bay Forest Development Corporation (Bay Forest), appeals from a decision of the Superior Court (*Dickson*, J.), declaring Schuster Plumbing and Heating Co., Inc. (Schuster) to be the owner of certain plumbing and heating supplies. For the reasons stated below, we affirm.

Schuster and Bay Forest formed a contract in July 1988. Schuster agreed to install plumbing for Bay Forest's condominium project and, in return, Bay Forest agreed to pay Schuster $210,000. The contract contains six sections: "Plumbing Material List," "Heating Ma-

terial List," "Plumbing Notes," "Heating Notes," "General Notes," and "Payment Schedule." The section entitled "Payment Schedule" reads:

"1. Complete project price . . . . . . . . $210,000.00 per 20 units.

2. All materials to be paid within 10 days of material dropped on site.

3. Progress payments to be made on labor every 30 days."

Schuster bought $26,250 worth of plumbing and heating materials (the materials at issue in this case) for the condominium project from third-party suppliers, and had them delivered to the condominium worksite. The trial court found that "the materials were delivered by a supplier to Mr. Schuster" on or about December 6, 1988, "and stored in a trailer . . . ." The trailer was leased by Bay Forest for Schuster's use at the condominium worksite. In addition to the supplies purchased for Bay Forest's condominium project, Schuster kept tools and other materials in the trailer. Schuster billed Bay Forest on December 6, 1988, for $26,250, "Progress Payment On Material Cost Only." However, Bay Forest did not pay this bill, and Schuster in turn did not install the plumbing materials in the condominiums.

On March 10, 1989, Schuster reported to the Dover police that the trailer containing the plumbing and heating materials was missing from the worksite. Once the police learned that the trailer had been moved to the property of a Bay Forest employee, the trailer, along with the materials inside it, were seized pursuant to a search warrant.

On May 23, 1989, the State filed a petition pursuant to RSA 595-A:6 (Supp. 1989) in the superior court requesting the return of the plumbing and heating supplies to Schuster, who the State alleged was the rightful owner. RSA 595-A:6 provides in pertinent part: "Upon application by a prosecutor, . . . the court . . . shall . . . order returned to the rightful owners any stolen, embezzled or fraudulently obtained property, or any other property of evidential value . . . ." Bay Forest, claiming ownership, objected to the petition, and on July 18, 1989, an evidentiary hearing was held with regard to this issue. The trial court found by "clear and convincing" evidence that Schuster owned the materials and denied Bay Forest's motion to reconsider. Schuster did not take part in the evidentiary hearing below and filed no brief in this appeal.

Bay Forest argues on appeal that its agreement with Schuster is either a divisible contract for goods and services, or a non-divisible contract predominantly for the sale of goods. In either case, Bay Forest argues that the UCC, RSA ch. 382–A, applies to the contract and confers upon Bay Forest ownership of the materials. *See* RSA 382–A:2–401 (title passes to buyer at time and place at which seller completes performance with reference to physical delivery of goods). Last, Bay Forest maintains that the trial court incorrectly applied RSA 595–A:6 to this case.

The State, on the other hand, argues that the contract is a single, indivisible, predominantly service agreement. Therefore, the State maintains, common law, rather than the UCC, applies to the contract, and the materials belong to Schuster. We agree with the State's position.

■    First, we address the question whether the contract between Schuster and Bay Forest is divisible. "If the parties gave a single assent to the whole transaction, the contract is indivisible, while it is divisible if they assented separately to several things." *Lemire v. Haley*, 91 N.H. 357, 360, 19 A.2d 436, 439 (1941). There is no evidence that the parties to the contract assented separately to the provisions concerning the plumbing and heating materials and the labor needed to install them. Instead, the written contract plainly memorializes a single assent to the whole transaction. Bay Forest agreed to Schuster's proposal of a single price, $210,000, for the installation of certain plumbing and heating materials, and in no way indicated that it agreed separately to different parts of the proposal. Moreover, Schuster apparently billed Bay Forest *at cost* for the plumbing materials at issue here. It would be unreasonable to assume that Schuster would agree to the sale of the materials separately from the remainder of the contract, because Schuster would derive no profit from the sale of the materials alone. We therefore hold that the contract is a single, indivisible agreement.

Second, we address the question whether this contract comes within the province of the UCC. *See* RSA 382–A:2–102. There is no dispute that the contract is in part a contract for the sale of goods and in part a services contract. Because the UCC generally applies only to the sale of goods, we must determine under what circumstances it will apply to mixed contracts for goods and services. *See id.* This jurisdiction has not yet adopted a test for making such a determination.

■ Both Bay Forest and the State advocate the use of the "predominant factor" test, articulated in *Bonebrake v. Cox,* 499 F.2d 951 (8th Cir. 1974):

> "The test for inclusion or exclusion [within the UCC] is not whether they are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (e.g., contract with artist for painting) or is a transaction of sale, with labor incidentally involved (e.g., installation of a water heater in a bathroom)."

*Id.* at 960. See 1 W. HAWKLAND, UNIFORM COMMERCIAL CODE SERIES § 2-102 (1982).

■ An alternative test is the "gravamen of the action" test. *See* 1 W. HAWKLAND *supra.* This test simply asks whether the underlying action is brought because of alleged defective goods or because of the quality of the service rendered. If the gravamen of the action focuses on goods, then the UCC governs. If the focus is on the quality of the services rendered, then common law applies. *See, e.g., Skelton v. Druid City Hosp. Bd.,* 459 So. 2d 818 (Ala. 1984) (needle broke off in plaintiff's body during operation; court held UCC applies in action alleging hospital "sold" plaintiff defective needle); *Anthony Pools v. Sheehan,* 295 Md. 285, 455 A.2d 434 (1983) (plaintiff slipped on pool diving board; court held UCC applied to predominantly services contract for installation of diving board because gravamen of action was alleged defect in diving board); *H. Hirschfield Sons, Co. v. Colt Industries Operating Corp.,* 107 Mich. App. 720, 309 N.W.2d 714 (1981) (court held that UCC does not apply to contract for sale of railroad and truck scale because action alleged defects in *installation* of scale, not in scale itself); *Providence Hospital v. Truly,* 611 S.W.2d 127 (Tex. Civ. App. 1980) (contaminated drug was injected into plaintiff's eye during cataract surgery; court held commercial code applies in action alleging breach of warranty of fitness of goods sold for particular purpose).

■■ The case before us centers on the ownership of the plumbing and heating materials, and not the installation of those materials. There has been no allegation that the goods are defective or nonconforming, nor has there been a complaint concerning labor and installation which would suggest a gravamen of the action analysis. The issue here is simply the ownership of the goods. In this case there is no action arising out of the contract, and thus the gravamen

of the action analysis is inappropriate. Hence, the "predominant factor" test should be applied, in this case, to determine if the contract should be governed by the UCC or by common law. In a future case alleging defective goods or alleging defective services, we may then consider whether the gravamen of the action analysis is appropriate.

Only two factors support classifying this contract as one for the sale of goods. First, the materials to be used are specifically itemized. *See Osterholt v. St. Charles Drilling Co.,* 500 F. Supp. 529, 533 (E.D. Mo. 1980); *Smith v. Urethane Installations, Inc.,* 492 A.2d 1266, 1268 (Me. 1985). Second, the contract provides for separate payment for the plumbing materials. *See Colorado Carpet Installation, Inc. v. Palermo,* 668 P.2d 1384, 1388 (Colo. 1983).

■ In contrast, several factors support a holding that the service aspect of the contract predominates. First, the language of the contract indicates an agreement for provision of services. Bay Forest's construction plan is termed a "project," and the contract states that "all plumbing [is] to be per Schuster's . . . design." *See Baker v. Compton,* 455 N.E.2d 382, 386 (Ind. Ct. App. 1983) (presence of design or engineering services, rather than mere installation services, may tip thrust of contract toward services side). Second, there is no price allocation in the contract between material and labor, and prices are not assigned to the itemized materials. Rather, the contract simply lists a "complete project price" of $210,000. *See Colorado Carpet,* 668 P.2d at 1389. Third, most of the contract price may be attributed to labor, and not to materials (the materials cost only $26,250, 12.5% of the total contract price). *See Smith,* 492 A.2d at 1268–69; *Colorado Carpet,* 668 P.2d at 1388. Fourth, Schuster was not in the business of manufacturing plumbing and heating materials or acting as a supply house. Instead, Schuster's business was the installation of plumbing and heating materials, bought from a supplier, according to its own expertise and design. *See Mennonite Deaconess Home & Hosp. v. Gates Eng.,* 363 N.W.2d 155, 161 (Neb. 1985); *Cork Plumbing Co. v. Martin Bloom Associates,* 573 S.W.2d 947, 958 (Mo. 1978). Fifth, the evidence tended to show that, in the contractual parties' prior dealings, ownership of the goods did not transfer from Schuster to Bay Forest until the goods were installed in the buildings. It was thus unreasonable for Bay Forest to presume ownership of the materials while they were still in the trailer. *See Colorado Carpet,* 668 P.2d at 1389. Given the weight of these findings, we hold that this agreement is predominantly a services contract.

438

Because the agreement is a contract for services, the UCC does not govern this dispute. RSA 382–A:2–102. We therefore must look to the common law to determine the ownership of the materials. In *The Saver's Bank v. Anderson*, 125 N.H. 193, 480 A.2d 82 (1984), we stated:

> "A chattel loses its character as personalty and becomes a fixture and part of the realty when there exists 'an actual or constructive annexation to the realty *with the intention of making it a permanent accession to the freehold,* and an appropriation or adaptation to the use or purpose of that part of the realty with which it is connected.' *Dana v. Burke,* 62 N.H. 627, 629 (1883) (emphasis added)."

*Id.* at 195, 480 A.2d at 84. "What is affixed to the land belongs to the owner of that land." *Chance v. Certain Artifacts Found and Salvaged,* 606 F. Supp. 801, 806 (S.D. Ga. 1984), *aff'd,* 775 F.2d 302 (11th Cir. 1985). The plumbing and heating materials at issue here were never affixed to Bay Forest's realty. Therefore, the materials still belong to Schuster.

Finally, we address Bay Forest's argument that the trial court incorrectly determined that the materials were "stolen, embezzled, or fraudulently obtained," and thus erroneously ordered them returned to Schuster pursuant to RSA 595-A:6. For a trial court properly to order the return of goods to their rightful owner pursuant to RSA 595-A:6, the goods must be "stolen, embezzled, or fraudulently obtained," *or* must be "any other property of evidential value." RSA 595-A:6. Therefore, the trial court could have ordered the materials' return upon a finding that they were of evidential value.

The trial court did not make such a finding, but instead granted Bay Forest's request number 27, which reads: "Thus, in evaluating the State's Petition [pursuant to RSA 595-A:6], the Court must determine . . . : a. That the materials are indeed stolen; and, b. The identity of the rightful owner." While this is an incorrect reading of RSA 595-A:6, we will not disturb the trial court's order, because the court reached the correct result in this case. *See Lemay v. Rouse,* 122 N.H. 349, 352, 444 A.2d 553, 555 (1982). Generally, "[w]hen a trial court reaches the correct result, but on mistaken grounds, this court will sustain the decision if there are valid alternative grounds to support it." *Id.*

We find that the plumbing and heating materials, as the subject of this case, were of evidential value. Because Schuster was the

rightful owner of the materials, the trial court correctly ordered them returned to Schuster.

*Affirmed.*

HORTON, J., did not sit; the others concurred.